## City of Louisville v. Uebelhor.

(Decided February 8, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Municipal Corporations—Street Crossings—Unsafe Condition—Injury to Pedestrian—Burden of Proof.—Appellee sued the City of Louisville for damages for personal injury caused, as alleged, by falling on a street crossing that was in an unsafe condition. Held, that the city does not insure the safety of its streets, and it is not reasonable to place upon it the burden of maintaining at all times every street crossing and side walk in a perfect condition. It is only required to be reasonably safe for use as a footway for pedestrians.   That which is customary may be regarded as ordinarily safe, and that is the standard.

2. Evidence—Continuity of Conditions—Relevancy.—Evidence tending to show a continuity of conditions from the time of the injury to that of the suit, and the evidence of the exact conditions at the time of the suit was relevant as tending to prove the exact condition at the time of the injury.

LEON P. LEWIS, CLAYTON B. BLAKEY and HUSTON QUIN for appellant.

J. J. KAVANAUGH for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellee sued the city of Louisville for damages for her personal injury, caused, it is alleged, by her falling

on a street crossing at Preston and Market streets in Louisville. She claims there was a hole or depression in the stones constituting the crossing, and as she alighted from a street car at night she stepped in the hole, lost her balance and fell, severely spraining an ankle. The issue tried out was whether the hole or depression was such as constituted an unsafe state of the crossing. The crossing was made of large flat stones laid end to end. Wagons passing over them had worn away two of the stones at their joints making a concave depression from one or one and a half inches to four or five inches deep. That is, the evidence of the plaintiff showed that it was four or five inches deep, while the evidence of the city showed the former. If it was as much as the latter, it was a question for the jury whether that was such a condition as was not reasonably safe for a street crossing. If it was only an inch and a half or two inches ,a smooth worn place in the stones it would not be in such a condition as indicates neglect of the crossing by the city. The city does not insure the safety of its streets, and it is not reasonable to place upon it the burden of maintaining at all times and under hazard every street crossing and sidewalk in a perfect condition. It is only required to be reasonably safe for use as a foot way for pedestrians. There must be some point short of perfection, therefore, that is not actionable negligence. We know as a matter of common knowledge that such depressions in a street as slight unevenness, caused by wear, of an inch or so are quite common in all cities. That which is so customary may be regarded as ordinarily safe, and that is the standard. It was, then, a very material question in this case as to the extent of the depression.

The accident occurred in August, 1907. The suit was begun in January, 1908. The trial was had October, 1909. The defendant offered to show that the same crossing was in existence when the suit was tried, without repair or material change; if there had occurred any change the depression would show some increase. The purpose of the evidence was to admit measurements of the depression as of the date of the trial, and perhaps to have the jury view the place. But the trial court rejected the offered testimony on the ground that the period of comparison was too remote from that of the accident. The lapse of time was of itself alone not so material. It depends on the nature of the thing to be described, and the conditions to which it has been subjected in the mean-

time. Stone such as that crossing was made of was as little subject to change as anything fitted for such use well could be. At any rate, when it was offered to show that it was in substantially the same condition as it was when the injury occurred, it was competent to then show its present condition. The purpose of all the evidence being to place before the eyes of the jury the identical situation at the time of the incident in controversy, that which is the most reliable ought to be given preference. Witnesses detailing the event as they saw it a year or two before are apt to forget, or their views may be exaggerated. If the hole or depression were measured, and its exact proportions given to the jury, or if they themselves had looked at it, it must be conceded that such evidence is of a more convincing character than statements of witnesses long afterward based upon estimates made from casual observation, no matter how honest the witnesses might be. The evidence, tending to show a continuity of conditions from the time of the injury to that of the suit, and then evidence of the exact conditions at the time of the suit, was relevant and receivable as tending to prove the exact condition at the time of the injury. (Wigmore Ev., section 347; Dean v. Shannon, 72 Conn., 667; Hunt v. Dubuque, 96 Iowa, 314; Jacksonville, Etc., R. R. v. Southworth, 135 Ill., 250; 25 N. E., 1093; Alsop v. Adams, 10 Ky. Law Rep., 362.) The ruling of the court rejecting the offered evidence was prejudicial error.

Instructions offered by the defendant were objectionable in that they were academic discussions of the law, and even though correct, should not have been given to the jury. They were argumentative, in addition. The instructions given by the court were proper.

Reversed, and remanded for a new trial.