## Commonwealth v. Tackett.

April 24, 1945.

732

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, J. E. Childers and Francis M. Burke for appellant.

Sidney Trivette and E. J. Picklesimer for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Certifying the law.

On August 9, 1943, appellee driving his truck on the highway, according to his evidence, unavoidably lost momentary control, and the truck ran across from his side of the road to a point where some women were standing or walking, resulting in the killing of one of the women and an infant child, and injuring two other women in the party. A grand jury returned four true bills against Tackett, two charging assault and battery, and two voluntary manslaughter. Thereafter Tackett went to trial on one of the manslaughter indictments, charging the killing of Mrs. Osborne by the gross, careless operation of his truck, the jury returning a verdict of not guilty. This appeal is by the Commonwealth's Attorney for a certification of law, Criminal Code of Practice, sec. 337, and it is contended that the court allowed incompetent evidence to go to the jury over objections. Assuming that the same or like evidence may be proffered on trial of another indictment, the court is asked to say whether the evidence complained of is or is not competent. A determination will require a brief recital of the proof.

Tackett had earlier on the day of the accident purchased a secondhand truck, operated with pneumatic brakes, from one Anderson. They negotiated at Myra, and both had gotten into the truck and driven it about for some time, then to Pikeville where the transfer was completed. Late in the evening Tackett, others riding with him, started to Myra. At some point the highway runs through a bridge, then around a rather sharp curve around a hill with guard posts on the lower side, an embankment on the other.

Mrs. Osborne and several of her neighbors who lived near Wright's store were traveling the highway in the direction of the store, as witnesses say on the left side of the road, near to or upon the edge of the pavement. Tackett was driving on his right side of the road. The proof for the Commonwealth is to the effect

that when within a very short distance of Mrs. Osborne and her neighbors he pulled his truck, or allowed it to go to the other side, striking some of the parties, with the result above mentioned. Witnesses testified that while rounding the curve appellee was driving between 35 and 40 miles per hour.

Tackett testified about his purchase of the truck from Anderson, and his driving it with Anderson for some time before the transfer was completed, and during which he experienced no trouble in its operation. He said that he had crossed the bridge, slowing up at that point to avoid some boys. As he left the bridge and approached and went into the curve, he was driving about 20 or 25 miles per hour. He had no difficulty in seeing the women and children on the left side of the road. However, he said that when within a short distance from the women, and as he "cut for the curve, two children ran out about the middle of the road; I put on my brakes to keep from hitting them. It made a big noise and took the wheel away from me, and I ran right into the women." This sudden putting on of the brakes had the effect of locking the left front wheel, which threw his car directly across the road to where the women were, and on to the shoulder. Believing that his truck was about to run into the bank and overturn, he released his brake, and straightened the truck back onto the pavement. He then stopped and went back to the point of the accident. He said when the left front wheel locked, the operation had burned the rubber and left marks on the road at a point where he had put on his brakes. He had 15 or more years experience in driving trucks. He said that he did not know of any defect in the brakes, or in any part of the truck, as he had never driven it prior to its purchase, and during his trying it out with Anderson nothing had occurred to manifest defects.

Anderson, testifying for Tackett, said that he had bought the truck from Bentley about five months before the transfer to Tackett. He had used it in hauling mine timber, and had never noticed any trouble with the steering gear or the brakes. He also drove the truck away from the place of accident without experiencing any trouble. His effort apparently was to show that he had sold an unimpaired truck to Tackett. The defendant then introduced two men both of whom testified that they had frequently driven the truck for Bent-

ley, and that on several occasions they had trouble similar to that claimed by Tackett. "The wheels would grab." Adams, one of the witnesses, said: "It like to have wrecked me several times. The left front wheel grabbed more than the others, and that would pull it to the left side of the road." Fleming, a former operator of the truck, had experienced the same trouble. The truck had left the road with him once while he was driving, because of the locking of the wheel on application of the brakes. Neither had mentioned this to Tackett; neither knew he had bought the truck. Bentley had bought the truck in 1936, and used it until sold to Anderson. He said that he had experienced trouble with the left-hand wheel. Sometimes the brakes would grab, and pull the truck to the left. He had undertaken to have the brakes adjusted, "and it would go a right smart while and not bother, and at times it would take these grabbing spells." Bentley had not told Tackett of his experiences.

It is contended by appellant that the evidence above recounted was incompetent because of remoteness in point of time. The two drivers had not operated the truck after its sale to Anderson. They both testified that they had not driven it for eight or nine months before the day they were testifying (February 1944). Assuming that they had driven it intermittently up to the time of the sale to Anderson, their driving was about five months prior to the accident.

Apparently, as we read the proof, it was the theory, or contention of the Commonwealth that Tackett was either exceeding the speed limit while rounding the curve, or was driving his truck with a defective brake. There was an effort also to show that Tackett had used intoxicants during the day of the accident. We are not concerned with these theories or contentions. The sole question is whether it was competent to introduce proof to show that on several former occasions the left front wheel of his truck had locked and pulled the car to the left of the road when the brake was applied, or as one witness says, "when the brake was mashed down."

Tackett testified fairly as to what occurred at the time, pitching his defense upon his claim of unavoidable accident, first because acting in an emergency, for which he would not be excused if the emergency was created by his negligence, and in making the move-

ment to avoid striking the boys who had stepped into the highway, the effort caused the brake to "grab" locking the wheel, and pulling the car from its path, resulting in the injuries stated.

Appellee was being tried on a criminal charge, a common-law offense; if the Commonwealth's theory that appellee willfully and recklessly left his path and ran into persons, resulting in death of a person is correct, he would be guilty of manslaughter. One of the elements may be driving at excessive speed. We have held that another element may be the driving of a car with the knowledge that his steering gear was in a defective condition. Largent v. Com. 265 Ky. 598, 97 S. W. 2d 538. In order to hold one criminally negligent there must be a higher degree of negligence proven than is required to establish negligence in a civil action. In the case of Consolidated Coach Co. v. Sphar, 226 Ky. 30, 10 S. W. 2d 482, we held that injury to cattle being driven along the highway was not excusable where the proximate cause of the collision was defective brakes, known to be so by the driver. In Golubic v. Rasnick, 239 Ky. 355, 39 S. W. 2d 513, we held that the court should have excluded testimony of one who had repaired the brakes some time after the injury, but solely because of lack of identification.

The general rule is that the question whether or not evidence of the condition of things before and after an event, is relevant and admissible to prove its condition at the time of the occurrence is to a large extent dependent upon the character of the thing and the nature of the condition sought to be proved, as constant or variable, and the existence of any change during the intervening period, and to some extent upon the length of that period.

"The broad general rule is to the effect that where there is no change of the condition of an appliance * * * either before or after the event at issue evidence is relevant and admissible to show its condition at the time of the event, provided it relates to the issue in question, and is not too remote in point of time." 20 Am. Jur. "Evidence," p. 284, sec. 306, and cases cited, some dealing with the question of remoteness of time.

Wigmore on Evidence, sec. 437 says: "So far then as the interval of time is concerned no fixed rule can

be laid down; the nature of the thing and the particular circumstances of the case must control.'' In point here is Johnson v. Charles W. Palomba Co., 114 Conn. 108, 157 A. 902, 80 A. L. R. 441, and City of Louisville v. Uebelhor, 142 Ky. 151, 134 S. W. 152.

Here there was no question of identity; the proof admitted showed the bad habits of the truck for a long period before the sale to Anderson. From the time of his ownership to the sale to Tackett, while it is shown that he operated it without trouble, it was not shown that he ever undertook to make sudden stop. It is shown that the truck was in the defective condition when he bought, and without repair before he sold to Tackett. We think that under the circumstances here shown the court properly admitted the evidence.

Law certified.