## Decker v. Commonwealth.

December 10, 1946.

512

H. C. Kennedy and Gladstone Wesley for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Obie Decker was convicted of the offense of receiving stolen property and was given one year in the penitentiary. He appeals.

The grounds upon which a reversal is now sought are: (1) Error of instruction, both as to content and as to method employed in its final drafting, and (2) improper conduct by the Commonwealth Attorney in his argument to the jury.

Evidence produced on the trial indicated that Decker, age 26, had made arrangements with two boys, ages 16 and 20, in the afternoon or evening immediately before Thanksgiving Day of 1945, to buy from them some walnut kernels at a price of twenty-five cents per pound; that the usual market price of such merchandise was sixty-five to seventy-five cents per pound; that these arrangements included an understanding that Decker was to meet the two boys and to receive this merchandise around the hour of 11:00 P. M. in a lumber yard, all of which plans were executed according to previous arrangements; that the walnut kernels were stolen by these two boys, after their first meeting with Decker, from one Samuel Block, the owner of this property; that the stolen property was, after its delivery from the two boys to Decker, taken by all three, together with one Edna Bur-

ton, to an out building on the place of one of Decker's neighbors and was left there by these parties very late that night; that Decker paid the boys $50 that night for this merchandise and then sold it the following day for $80.50, even though the usual market price should have been more than $100 for such merchandise.

1. Appellant's first complaint is that the court erroneously instructed the jury and also pursued a prejudicial method in doing so. The court instructed the jury, in brief substance, to find Decker guilty if they believed that he had received the goods in question and if they further believed that the "defendant knew that said two bags of walnut kernels had been stolen from the said Samuel Block." After deliberating some time, the jury called upon the court for information. The judge and counsel for both sides went into the jury room. The jury inquired as to whether they must believe, in order to convict, that Decker knew at the time of his purchase that the merchandise had been stolen *from Samuel Block*. The judge and attorneys returned to the court room, and the judge then altered this instruction by crossing out the words, "from the said Samuel Block," over appellant's objection. The contention of appellant is that the stricken words should have remained in the instruction, thus leaving it to conform to the exact wording of the indictment. And he further contends that the alteration of the instruction, if done at all, should have been accomplished by the preparation of a new instruction rather than by the method of crossing out the words which were eliminated.

The usual purpose of an instruction is that of submitting a theory of a case to a jury for its decision. The theory of the Commonwealth in this case was that Decker had knowingly received some stolen property, whether owned by the Church of England, the King of Siam or John Doe made no material difference. The theory of Decker was that he did *not knowingly receive* the stolen property as charged. But a particular ownership of this property before the thievery was no legitimate part of appellant's theory. Even though the property owner's name did appear in the indictment and even though such owner's name could legally have continued in the court's instruction, the name itself, in a case of this kind, was surely an unessential accessory, like a vermiform appen-

dix or a wart on the chin. Inclusion of the property owner's name in the instruction added nothing to the dignity or standing of this case on either side. We have heretofore stated in a somewhat similar case, involving a charge of knowingly receiving stolen property, that knowledge that the goods were stolen is the controlling element of the crime. See Grady v. Commonwealth, 237 Ky. 156, 35 S. W. 2d 12. And so we are presently persuaded that a knowledge of the property's dishonest origin, without any necessity of a further particularity in relation thereto, is the gist of this crime.

As to the method of alteration of the instruction, viz., by striking out the words of excess, we are now impelled to say that we are unable to follow or accept the reasoning of able counsel for appellant anent the possibility of prejudice toward their client through the pursuit of this method. The jury was confused; the court conceived that certain words could be lifted from the instruction without destroying anybody's theory of the case and thus relieve the jury's confusion; he chose to lift the words by lining through them. Relying upon our ordinary understanding of human nature, we are led to a firm belief that the jury would have encountered no greater difficulty in convicting Decker under a brand new instruction than they did encounter under this very instruction, which was altered through the method stated, and which was then actually used by the jury in rendering its verdict.

2. Appellant's second contention is that the Commonwealth Attorney employed improper argument before the jury. It appears that Decker and Edna Burton, the girl who accompanied him and the two boys on the midnight ride to the out house where the walnut kernels were left, were married some time between that midnight ride and the date of this trial. The Commonwealth, possibly not knowing of the wedding bells, had Edna Burton Decker subpoenaed as a witness against Decker, but on the trial it failed to offer her as a witness in the case. And so, in argument to the jury, the Commonwealth Attorney stated, in substance, that Decker had married Miss Burton in order to make her an incompetent witness against himself, a motive previously denied by Decker on the witness stand. Appellant says this argument, to which he objected without being able

to get the court's ruling thereon, was prejudicially erroneous.

The general principle that in order for error to be ground for reversal it must be prejudicial applies to error in the argument of counsel, not only in civil, but also in criminal, cases. In determining whether or not the error was prejudicial, and therefore reversible, the general tests applicable in other situations apply. One of the most general is whether or not the verdict was affected. Actual injury to the appellant is generally regarded as necessary to a reversal. See 3 Am. Jur. 609, 610.

It may be assumed that the Commonwealth Attorney's argument referred to above was improper and that the trial court committed error in failing to sustain appellant's objection to this argument and also in failing to admonish the jury in relation thereto. However, we do entertain the most serious doubt as to any adverse effect having been produced by this argument. Therefore, we must take the view that this deflection affirmatively appears to us to have occurred without the accompaniment of any prejudice to appellant. We do not believe that the appellant was injured by the weapon of this somewhat unwarranted argument. There was such a great quantity of the stifling smoke of so many suspicious circumstances that the jury appears to have been led to believe that the ugly flame of appellant's guilt was smoldering away beneath all the externals of this case. Because of all these evidential occurrences which were established by the testimony on this trial, we cannot now believe that any different result whatever would have emanated from this trial if every part of the Commonwealth's argument had been strictly and unquestionably proper.

Wherefore, seeing no error on this trial to the prejudice of appellant's substantial rights, the judgment is now hereby affirmed.