Henry DARNELL, t/d/b/a 9th & Broadway Auto Sales, Appellant,

v.

Jewell W. BEARD, Sr., Appellee.

Court of Appeals of Kentucky.

Oct. 5, 1956.

As Modified on Denial of Rehearing Dec. 7, 1956.

William A. Miller, Miller & Howard, Louisville, for appellant.

Goldstein & Leibson, Louisville, for appellee.

MONTGOMERY, Judge.

The appellee, Jewell W. Beard, Sr., recovered a $5,000 verdict against the appel-

lant, Henry Darnell, t/d/b/a 9th & Broadway Auto Sales. On appeal, the insufficiency of the evidence to establish negligence or any causal connection is urged. Other errors are claimed.

On the night of January 21, 1955, appellee entered the used car lot of appellant as a prospective purchaser. He was directed to a 1949 Oldsmobile "98" by a salesman who was busy with another customer. He stated that the salesman invited him to start the car and try it out. The car was parked so close to other cars that entry by the left door was not easily obtained. Appellee entered through the door on the right side of the car and slid across into the driver's seat.

This car was equipped with an automatic gearshift. There were four positions for the gearshift lever. On the extreme left was neutral. Next, moving to the right, was drive; then low, with reverse being the extreme right position. The motor would start only when the lever was in the neutral position.

Appellee moved the lever from the drive position to neutral and started the motor. He "raced" the engine and heard a "clanking sound". Opening the left front door, he set one foot on the pavement, and put his head out between the door and windshield post to listen to the motor. The motor was "idling up high". About one and one-half minutes after the motor had been started, and while still idling, the car moved forward four or five feet. The door collided with the cars parked on the left. The force caused the door to close partially, thereby catching appellee's head between the door and windshield post. The exerted pressure broke appellee's jawbone and caused other injuries. Appellee reached the gearshift lever, put the car in reverse and thus extricated himself.

This action was brought on the theory that the gearshift lever jumped from neutral into drive position because of a defective condition. Appellee said that he did not hear or see any change of the gearshift lever into the drive position. He denied that he moved the lever after starting the motor.

Oscar King was introduced by appellee. He qualified as an expert Oldsmobile mechanic. He stated that three mechanical conditions could cause the gearshift lever to jump from neutral to drive position. None of these conditions was shown to have been present. In cars having such a defect, he said, the lever would jump immediately after the motor was started rather than one and one-half minutes thereafter. As to the frequency of the jumping, he said it would occur 50% of the time. He stated that such a defect would become apparent only when operating the car and that ordinarily an inspection for such a defect would not be made.

The testimony for the appellant was to the effect that he had purchased the Oldsmobile along with other cars from another used car dealer. The car had been delivered late in the evening and about two and one-half hours before appellee was injured. A mechanic who drove the car said he started the motor twice without the gearshift lever jumping. The car was driven on the lot without any lever jumping. The subsequent purchaser of the car stated that he used it daily from February 14 to April 6 without the lever jumping. Appellant's salesman denied that he told appellee to start the car. Further testimony for the appellant was to the effect that he had no knowledge of any such defect.

 Appellee said that in order to free himself he pulled the lever into reverse position. In so doing, he was able to determine that the lever had been in drive position when it moved forward. The record has been read carefully in order to learn how the lever came to be in drive position. The testimony on behalf of the appellee does not show how this happened. The Court is left to conjecture as to whether appellee is correct in his opinion that the lever jumped because of a defect or

whether it got into the drive position by some other means. It is useless to speculate as to how it happened since there must be evidence upon which to make a reasonable inference and base a conclusion. There is none here and the jury was left to guess as to what happened. Appellant's motion for a directed verdict and for a judgment notwithstanding the verdict should have been sustained. Wigginton's Adm'r v. Louisville Ry. Co., 256 Ky. 287, 75 S.W.2d 1046; Gross v. Kelly, 314 Ky. 670, 236 S.W.2d 930; Fitch v. Mayer, Ky., 258 S.W.2d 923.

This case is distinguishable from Gaidry Motors v. Brannon, Ky., 268 S.W.2d 627, and Armour v. Haskins, Ky., 275 S.W.2d 580. There is no evidence here that a defect existed in the car or that any such defect was the proximate cause of appellee's injury.

 Appellee offered to show by testimony that the automatic gearshift on the car was defective about two months before the injury was suffered. This evidence was rejected by the trial court because appellee did not show that the alleged condition remained the same until the date of the injury. During the intervening period, the car had been owned by another used car dealer who could have changed the condition.

Intervening circumstances, the nature of the specific thing, and the particular circumstances of the case at hand prevent the application of a fixed and rigid rule concerning the admission of testimony with reference to the condition of a certain object or thing prior or subsequent to the date of injury suffered. Such a matter is within the trial court's discretion. Wigmore on Evidence, Volume II, Section 437(1), page 413; 20 Am.Jur., Evidence, Section 306, page 284. The trial court was correct. The position of appellee is not sustained by Commonwealth v. Tackett, 299 Ky. 731, 187 S.W.2d 297, relied upon by him.

No merit is found in the objection made by appellee to the approval by the trial court of the transcript of the evidence.

The judgment is reversed with directions to enter judgment for the appellant.