Samuel Allen MASON, Administrator of the
Estate of John Teet Mason, De-
ceased, Appellant,

v.

Ronald L. STENGELL, Appellee.

Court of Appeals of Kentucky.

May 2, 1969.

John D. Miller, Williams & Miller, Owensboro, for appellant.

William G. Craig, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellee.

EDWARD P. HILL, Judge.

The appeal is from a judgment entered pursuant to a jury verdict finding for appellee-defendant in appellant-plaintiff's action to recover damages to the estate of appellant's intestate as the result of appellant's intestate, a twelve-year-old boy, being struck and killed by appellee in the operation of his automobile. The boy was riding a bicycle.

A reversal is sought on the grounds that the trial court erred: (1) in excluding certain evidence offered by appellant; (2) in giving instruction number I and in refusing to give appellant's offered instruction number III; and (3) in refusing to discharge the jury and to continue the case for improper argument by counsel for appellee.

First we discuss the facts. The tragic event occurred about midnight, June 20, 1965, on U.S. 60 one and one-half miles east of Owensboro. The paved portion of the highway is 24 feet wide with shoulders 12 to 14 feet wide on each side of the pavement. The shoulders were under construction, or reconstruction, so that their grade had been lowered 10 to 12 inches below the level of the pavement preparatory to laying surface material to bring them up to the pavement. Barrels, painted black with three white stripes around them, were placed along the shoulder just off the edge of the pavement.

The deceased boy was riding a bicycle on his right side of the pavement in an easterly direction from a picnic to his home. He was wearing blue jeans, a black shirt, and a white "coca-cola" hat when he was struck in the head by the left-rear bumper. There were no lights on the bicycle.

**414**

Appellee was traveling west and after passing two automobiles was in the process of getting back in his lane of traffic when he noticed a slow-moving truck just ahead. He again turned his car into his left side of the pavement, and while passing the truck, he met the deceased, who was on his extreme right edge of the pavement. It is pretty clear from all the evidence that deceased lost control of his bicycle and fell from it. The bicycle was not touched by appellee's car, and the only injury to the deceased was one to the side or back of his head made by the left-rear bumper. Appellee's speed was fixed at 40 to 45 miles per hour in an area with a speed limit of 45 miles per hour.

Appellee testified he did not see the deceased until he was within 60 to 70 feet of him; that his headlights were in good condition.

We discuss first appellant's second ground for reversal; that is, the instructions given by the trial court and those offered by appellant and refused by the trial court.

Instruction I (c) given by the court required deceased to "have his bicycle equipped with a light in front which would reveal substantial objects at least fifty (50) feet ahead."

Instruction II, defining appellee's duties, failed to impose on appellee a duty to have his car "equipped with at least two head lamps" * * * "so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead" as required by KRS 189.040(1) and (3) (a). While the statute just quoted does "not require lights which will reveal objects for 350 feet under all conditions and at all times" as observed in De Bu- v. Walden, Ky., 255 S.W.2d 616, we think under normal atmospheric and road conditions the statute does require such lights. The facts in the present case disclose that the accident occurred on a straight road on a clear night (no fog). Appellee's evidence that he did not see deceased until he

was within 60 to 70 feet warrants the inference that his lights did not meet the statutory requirement. We think instruction II was erroneous and prejudicial to appellant in not specifying a duty to have proper headlights as required by the statute, particularly so after having required in instruction I that deceased have his bicycle equipped with a light.

Instruction I enumerated the duties of deceased. This instruction, after imposing the duty on deceased to "exercise ordinary care * * * commensurate with that degree of care exercised by an ordinarily prudent boy of the age of twelve (12) with the intelligence and experience," contained the following hypothetical advice to the jury:

"*If the deceased were an adult* it would have been his obligation to operate his bicycle so as not to bring it into collision with other persons and vehicles using the highway at that time and place, *and if an adult* this duty *would include* the following duties: * * *." (Emphasis ours.)

Then follows the listing of four specific duties, including the duty of keeping his vehicle under reasonable control, a lookout duty, to equip the bicycle with a light, and to "use the means at hand to avoid the collision." This part of the instruction did not impose upon deceased an absolute obligation to perform the statutory duties enumerated, but to "exercise ordinary care * * * commensurate with the degree of care exercised by an ordinarily prudent boy of the age of 12 years with intelligence and experience" of deceased. We do not find this instruction improper.

We accept as sound the following quotation from 7 Am.Jur.2d, Automobiles and Highway Traffic, § 432, at pages 984 and 985:

"The ordinary rule that a child's contributory negligence is to be tested by the standard of care of an ordinarily prudent child of the same or similar age,

intelligence, experience, and capacity, under the same or similar circumstances, is applicable even where the act of contributory negligence charged was the violation of a statute or ordinance by an act which, as to an adult, would have been negligence per se. Traffic regulations are not intended to impose upon children the standard of care required of adults, and a motorist has no right to assume that children will obey all traffic regulations. It has been said that in approving the humane rule that a child is not to be barred from recovery as a matter of law because of a violation of a traffic regulation, this does not mean that the child is free from a general duty to obey the regulation; rather, the age, experience, and intelligence of the child are to be considered in determining whether he was guilty of contributory negligence, even where he violated such a regulation."

If upon another trial the evidence should be substantially the same as on the first trial, the court should give the following instruction relative to the duties of the deceased:

It was the duty of the deceased child, in the operation of his bicycle, to exercise ordinary care for his own safety, and to exercise ordinary care not to operate his bicycle at nighttime without a light on the front, which would under normal atmospheric conditions reveal substantial objects at least fifty (50) feet ahead.

"Ordinary care" as used in this instruction means that degree of care reasonably to be expected from a child of like age, intelligence, and experience under circumstances similar to those proven in this case.

If the jury believe from the evidence that the deceased child, at the time of the accident, failed to exercise ordinary care as defined in this instruction, and that such failure on his part, if any, contributed to his death to such an extent that but for such failure on his part, if any, it would not have occurred, you will find for the defendant.

Appellant argues that prejudicial errors were made by the trial court in overruling his motion to read to the jury appellee's deposition taken on discovery and certain answers of appellee to interrogatories, all pertaining to the condition of the headlights of appellee's automobile. Appellee admitted in deposition that this automobile was involved in a wreck about a year previous to the accident giving rise to the present case; that it had not been repaired, although contending his headlights were in proper condition on the fatal night. We think this evidence was admissible. Appellee could offer any evidence that his headlights were not affected by the wreck the year before or that he struck a barrel after striking the deceased to counteract any evidence or inference that his headlights were defective at the time of the accident here involved.

Appellant also insists that it was prejudicial for the trial court to deny his offer to present evidence by an expert witness on the condition of appellee's headlights a year and two months after the accident. In the absence of evidence that the automobile was in the same condition as immediately before the wreck, we doubt the propriety of allowing the introduction of this evidence.

Apparently the trial court was of the opinion that evidence of the wreck the year previous to this accident was too remote. Remoteness is a matter of degree, a relative concept with no fixed standard, the determination of which is usually a discretionary matter for the trial court. See Darnell v. Beard, Ky., 296 S.W.2d 743 (1956). "However, that a fact is remote in point of time * * * does not of itself preclude its admissibility, but its admissibility depends to a large extent on the nature and circumstances of the case * * *." 29 Am.Jur.2d, Evidence § 253,

at page 305. In determining the question of remoteness, the test seems to be that if the offered evidence is so remote in time as to be irrelevant and have no probative value at all, it should not be admitted. On the other hand, if the evidence is relevant and has some degree of probative value, however small, it is admissible, and its weight is for the jury. 20 Am.Jur., Evidence § 250, at page 244. Among cases finding evidence too remote are Nolan v. Nally, Ky., 342 S.W.2d 400 (1961), and De Long v. Owsley's Ex'x., 308 Ky. 128, 213 S.W.2d 806 (1948).

Shewmaker v. Richeson, Ky., 344 S.W.2d 802 (1961), is a case holding that remoteness in time was not sufficient to exclude certain evidence.

. The evidence, the exclusion of which is complained of, would have shown that appellee's car was involved in a wreck fourteen months before the present accident and sustained some damage to the headlights; that no repairs were made in the interim. Inasmuch as appellant's case was pitched on a "defective lights" theory and appellee admitted that he did not see deceased until within 60 to 70 feet of him, we think this evidence should have been admitted.

Finally, appellant argues that his case was prejudiced because of improper argument made before the jury by counsel for appellee.

There were two instances in which appellant felt that the appellee was making improper and prejudicial arguments in his (appellee's) closing argument. First, appellee's counsel stated: " * * * [B]ut here sits a man—are you going to tell him, you twelve citizens, are you going to look at this young man and say 'all twelve by our vote *convict* you of killing that twelve year old boy.' " (Emphasis ours.)

At this point appellant's counsel objected and asked that the jury be admonished, whereupon the court agreed and responded: "Admonish the jury that this is not a criminal prosecution * * *. This is a civil action."

Immediately afterward the appellee's attorney responded with the following statement:

"* * * [S]ure, he is not going to the penitentiary, but if twelve people decide that it was his fault that this boy is dead, he's going to have to live with all his life under the belief that for some fault I killed that boy * * *."

As a general rule, improper argument of counsel requires reversal only when it is prejudicial and results in injustice or deprives a party of a fair and impartial trial. See Town of Wingo v. Rhodes, 234 Ky. 385, 28 S.W.2d 465 (1930), and Decker v. Commonwealth, 303 Ky. 511, 198 S.W.2d 212 (1947). As another general rule, if the attention of the court is called to an improper argument and if the jury is admonished in regard to it, a reversal will not be had unless it appears that the argument was so prejudicial under the circumstances that the admonition of the court would not cure it. See Thomas v. Smith, 302 Ky. 636, 195 S.W.2d 274 (1946), and Elliott v. Drury's Adm'x., 309 Ky. 814, 219 S.W.2d 3 (1949). Finally, if an improper word or sentence is used, generally a proper explanation by the attorney who used it avoids any prejudicial effect. See Louisville & Nashville Railroad Co. v. Mattingly, Ky., 339 S.W.2d 155 (1960).

The second alleged improper argument pertains to the "Golden Rule" type remarks. Appellee's counsel stated:

"* * * But for some reason unknown to us these things do happen and you as jurors must decide what this man could have done or what he should have done as an ordinary person under the circumstances; what would you have done, if you wish, had you been in this situation? What did he have time to do?

What more could he have done under the circumstances?"

\* \* \* \* \* \*

"I don't believe there was anything he could have done about it. I don't believe you're going to say to him to carry on his head the rest of your life, 'all twelve say you were at fault,' because I believe if you individually will put yourself behind the steering wheel—and drive down that road—you would have done no different than he did."

The appellant objected to the foregoing argument and requested the court to admonish the jury. The court overruled the objection and did not admonish the jury, stating that the court felt the argument "is in no way prejudicial to the rights of the plaintiff [appellant]." A timely motion to discharge the jury and declare a mistrial was similarly overruled.

First of all, this specific argument appears not to be a "pure" type "Golden Rule" argument, even though in some respects it has some similarity to that rule. It does not ask the jury to step into the position of defendant and render a verdict as would be desirable to them if they were the defendant as was done in Murphy v. Cordle, 303 Ky. 229, 197 S.W.2d 242 (1946), and Stanley v. Ellegood, Ky., 382 S.W.2d 572 (1964). Neither does it ask the jury to step into the shoes of the plaintiff or defendant and render damages accordingly as was done in Southern-Harlan Coal Co. v. Gallaier, 240 Ky. 106, 41 S.W. 2d 661 (1931), and May v. Francis, Ky., 433 S.W.2d 363 (1968). These remarks may very well have exceeded the bounds of propriety, but we need not so hold as we assume they will not be repeated in the event of another trial.

The argument is made that the verdict finding for appellee "as against all claims of the plaintiff" should be construed as a finding by the jury that the deceased was guilty of contributory negligence and/or that defendant was free of negli-

gence, or to say the least, rendering the question of appellee's negligence unimportant on this appeal entitling appellee to an affirmance. With this argument we cannot agree. See 5 Am.Jur.2d, Appeal and Error, § 787, at page 229, wherein the rule is thus announced:

"Under the rule apparently in force in some jurisdictions, where the verdict is general and there is a showing of error prejudicially affecting one of the various grounds of action or defense presented, the verdict must generally be set aside since no determination can be made as to which of the issues or defenses the jury relied upon in reaching its verdict."

The judgment is reversed for a new trial consistent with this opinion.

OSBORNE, PALMORE, REED, MILLIKEN, and STEINFELD, JJ., concur.