HART COUNTY BOARD OF EDUCATION, Obert Jaggers, Chairman of the Hart County Board of Education, and Brownie Rock, Chester Devine, Larry Perkins, and Steve Bowman, Members of the Hart County Board of Education, Appellants,

v.

Rennard BROADY, Appellee.

Court of Appeals of Kentucky.

Feb. 2, 1979.

Robert B. Hensley, Hensley, Craddock, Talley & Dunn, Horse Cave, for appellants.

H. Jefferson Herbert, Jr., Wilson, Herbert, Garmon & Sparks, Glasgow, for appellee.

Before COOPER, LESTER and WILHOIT, JJ.

LESTER, Judge.

The Hart County school authorities appeal from an adverse judgment of the court below which restored appellee to the position of principal after his demotion as such by the board of education. The circuit judge heard this cause without intervention of a jury pursuant to the provisions of KRS 161.765 and 161.790 and after making findings of fact and conclusions of law, rendered the judgment aforesaid.

Since KRS 161.765, the demotion statute, directs that appeals from a determination by a board of education "may be taken in the same manner and under the same provisions as an appeal from board action under KRS 161.790", then the function of this court is set forth in CR 52.01, which limits us to a determination of whether the findings of the trial court are clearly erroneous. 7 W. Clay, *Kentucky Practice*, CR 52.01, Comment 8 (3rd ed. 1974), *Harlan County Board of Education v. Stagnolia*, Ky.App., 555 S.W.2d 828 (1977). This would be true despite appellants' attempt to distinguish between a demotion case and a termination of contract type of litigation.

The record made before the appellant administrative body consists of 480 pages of testimony and on some 52 occasions there was applause, laughter, shouting and remarks from the spectators, caustic remarks between counsel, remarks between counsel and spectators and certain shouted denials from the audience as witnesses testified. One would not necessarily have had to be present at the hearing, but would only need to read the record, to be aware of the Roman circus type of atmosphere that prevailed during the five night sessions held in appellee's case. It was this transcript that caused the trial judge to write in part:

> The four resultant volumes of the transcript chronicle proceedings unique in the annals of jurisprudence. The chairman lost control of the situation; the attorneys directed their remarks to each other; the spectators broke into applause on numerous occasions; and certain of the spectators shouted denials as witnesses testified. Incompetent evidence flowed in a mighty stream.

It is this type of record that lends credence to the comment of Justice Palmore in *Bell v. Board of Education of McCreary County*, Ky., 450 S.W.2d 229, 232 (1970), that "[t]he prospect of a 'fair trial' at the board level is bound to be, in most instances, an illusion."

Appellants' superintendent, Leland Gregory, recommended appellee's demotion through the medium of charges dated April 13, 1977, which detailed specified incidents dating as far back as February, 1976, but the record reveals that the inception of this action was actually found in the remark of appellant, Brownie Rock, a board member, who stated to a witness that "we are going to get rid of Mr. Broady" some two to three years prior to his evidence before the court given on April 5, 1978. The scheme continued to develop in August of 1976 when another witness was hired as a temporary secretary in appellee's school. Before assuming her duties, she was engaged in a confidential conversation by Gregory, the substance of which was a request that she report appellee's absences from the office, as a basis for charges, because "we want to get rid of Mr. Broady, but we can't because he has tenure."

The plan to "get Mr. Broady" gained assistance from four of the thirty-four

teachers in appellee's school, and was led by one of the four who not only agitated the faculty members against the principal but also discussed the affair with board member Rock. It was this teacher, a professional person holding two degrees in education, who in the presence of other staff members and "one little girl" called another teacher "a two-faced, fat-bodied bitch." This elevating comment was made in the school during the period that the board was conducting its sessions, or more specifically on Friday, June 3, 1977.

At the conclusion of the board's deliberations, Brownie Rock made the motion to demote Rennard Broady.

█ With this background in mind, we marvel at appellants' language contained in their reply brief to the effect:

First, the Courts are not the proper agency to administer the school system. With all due respect, Judges simply lack the information and the expertise needed to sit in review of a School Board's personnel decisions. A Court's scope of review should be confined to the patently arbitrary or baseless demotions which must be invalidated.

The Hart Circuit Court must have agreed with the last quoted sentence when it ordered appellee reinstated, for it determined that the board's decision was unreasonable, arbitrary and predetermined. We agree with the court and accordingly, we will affirm.

The circuit court denominated the charges against appellee to be of such "nit-picking, straw-grasping quality as to appear ludicrous on the face of them." Let us briefly examine the superintendent's indictment. Gregory pitches much of the grievances upon Broady's failure to have custodians perform such duties as cleaning a drain on the faculty parking lot, washing windows and sweeping floors. The transcript reflects that the principal personally attempted to clean the drain (which task we do not perceive to be among his duties), and the other janitorial omissions can be laid at the doorstep of the board of education and its chief executive officer for failure to provide even the minimum custodial help recommended by the State Department of Education. Appellee is further accused of not seeing to it that the playground was adequately supervised. Gregory waited from April of 1976 until a year later to make this allegation, but when he did, it was completely refuted by the teachers who actually performed the supervision. In March, 1976, Broady made a statement while having lunch in the presence of three staff members that he was not happy with the lunch program and was going to do something about it. For this, they wanted to demote him. In the first place, we are unaware of any valid rule, regulation or statute that deprives a person of their First Amendment rights when they become a principal in our Kentucky schools. If the director of food services, who was responsible to the superintendent and not appellee, was not providing adequate breakfasts and lunches, then that person should be criticized. We note that Gregory waited from March 3, 1976, until April 13, 1977, to level this charge. In spite of his denial that he was charging Broady with dishonesty, Gregory says the principal made no accounting *to the teachers* for certain funds such as activity fees. There was no board policy requiring such an accounting, but from the testimony, it was abundantly clear that whenever a faculty member desired to know how much money was available for their specific purposes, they had to do nothing more than go to appellee's office where they could obtain the information. This allegation appears to have its roots in the fact that Broady never went directly to Jane Simms and told her what sum she had at her disposal. On the other hand, she never made inquiry of Broady, for she said, "I don't think we should have to go to him." Gregory further accuses the principal with being absent from school for three half days during 1977, but appellee provided a more than satisfactory explanation for these occasions. There were several other charges which were either too general, without dates, or, to employ the language of the trial judge, so "ludicrous," as not to require further elaboration.

Appellants cite *Bell v. Board of Education of Harlan, Kentucky, Independent School District,* Ky.App., 557 S.W.2d 433 (1977), as establishing a test for what is substantial evidence sufficient to support a finding of a board. We do not view *Bell* in the same light, for we believe that it merely spells out the duty of the trial court in this type of case. It first requires examination of the charges to determine if the notice was adequate and, "[h]aving been satisfied with the adequacy of the notice, [the trial court] must then determine if there is substantial evidence to support the conclusion reached by the Board." *Id.* at 434. *Bell* does not stand for the proposition that the circuit court cannot make the determination that there was insufficient substantial evidence to sustain the charges. However, this facet of the appeal is of little significance since the prime basis for the court's decision was the arbitrary and predetermined opinion of the board.

 It is axiomatic that the fair trial concept is deeply engraved into the due process requirements. Moreover, it is well established that "a biased decisionmaker [is] constitutionally unacceptable [and] 'our system of law has always endeavored to prevent even the probability of unfairness'." *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), quoting *In re Murchison,* 349 U.S. 133, 136, 99 L.Ed. 942, 75 S.Ct. 623 (1954). *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), does not overturn the standards of *Withrow,* but merely distinguishes between incapability of one's judging a particular controversy fairly on the basis of its own circumstances and mere familiarity with the facts of a case gained by an agency in the performance of its statutory role. In the present litigation, appellee has a distinct interest or stake in the matter, for a portion of his income and his competency as an administrator and professional responsibility are at stake. We believe that he was entitled to a completely unbiased tribunal to hear his case. Considering "a realistic appraisal of psychological tendencies and human weakness", *Withrow, supra,* we believe Brownie Rock's participation in the hearing and decision making process before the board vitiated the due process requirements.

It has been urged that Rock's comments were too remote in time and should have not been considered. We reject this contention, for

[t]he test as to remoteness is that if the offered evidence is so remote as to have no probative value it should be excluded but if it is relevant and has some degree of probative value, however small, it is admissible, and its weight is for the jury. *Caton v. McGill,* Ky., 488 S.W.2d 345, 346 (1972).

Moreover, "[r]emoteness is a matter of degree, a relative concept with no fixed standard, the determination of which is usually a discretionary matter for the trial court." *Mason v. Stengell,* Ky., 441 S.W.2d 412, 415 (1969).

It should be noted that the Hart Circuit Court not only reviewed the record made before the board, but also heard additional evidence. It was at this second stage of the proceedings that the evidence concerning Rock's efforts directed towards Broady was adduced. Unlike *Burkett v. Board Of Education Of Pulaski County,* Ky.App., 558 S.W.2d 626 (1977), where the circuit court specifically found nothing to suggest bias, this case presents far more than an "inference of arbitrariness," *Snapp v. Deskins,* Ky., 450 S.W.2d 246 (1970), and this is why it is distinguishable from *Harlan County Board of Education v. Stagnolia,* Ky.App., 555 S.W.2d 828 (1977). In *Stagnolia,* the real basis for disciplinary action was political in nature, and consequently, only an inference of arbitrariness was necessary to void the board's action, while in the present appeal there exists a series of circumstances consistent with a well designed plan to oust appellee from his principalship, which demonstrates outright prejudice against him. In this matter, more than an inference was necessary to void the board's action. More than an inference was present and accordingly,

The judgment is affirmed.

COOPER, J., concurs.

WILHOIT, Judge, concurring.

I concur in the result reached by the majority, although I cannot agree with the conclusion of the trial court that had all of the charges against the appellee been proven "it would not have been sufficient grounds to justify the demotion of a principal." The statute requires that an administrator be given written notice of any recommendation for his demotion and, when contested, a specific statement of the grounds upon which the recommended demotion is based. Unfortunately, the statute gives us no guidance as to what grounds are sufficient upon which to demote administrative personnel. Appellants have argued that a principal has no tenure right to that position and hence grounds which are sufficient to support the dismissal of a nontenured teacher will suffice to demote a principal. It does not seem to me that the Legislature intended that the grounds necessary for demotion for an administrator be equal to those required to dismiss a tenured teacher. Perhaps the answer lies somewhere between these extremes. In any event, we need not reach this important question because the Superintendent chose the grounds upon which to base his recommendation and the trial court found those grounds to be without factual foundation. This factual finding of the court was not clearly erroneous and I therefore believe the result reached by the trial court should be affirmed.

Appellant's complaint about the authority of the circuit court to hold the kind of hearing it held here is more properly addressed to the General Assembly than to this Court.