Cecil PETETT, Appellant,

v.

BOARD OF EDUCATION OF MONROE COUNTY, Kentucky, A Body Politic, James Graves, Superintendent of the Board of Education, and K.R. Crabtree, J.R. Comer, and Larry T. Ross, Members of the Board of Education, Appellees.

BOARD OF EDUCATION OF MONROE COUNTY, Kentucky; James Graves, Individually and as Superintendent of the Board of Education; K.R. Crabtree, J.R. Comer, and Larry T. Ross, Individually and as Members of the Board of Education, Cross-Appellants,

v.

Cecil PETETT, Cross-Appellee.

Court of Appeals of Kentucky.

July 6, 1984.

Rehearing Denied Sept. 7, 1984.

Discretionary Review Denied Feb. 21, 1985.

Philip I. Huddleston, Huddleston, Brothers & Duncan, Bowling Green, for appellant/cross-appellee.

F.C. Bryan, Bryan & Fogle, Mount Sterling, for appellees/cross-appellants.

Before COMBS, HOWARD and Mc-DONALD, JJ.

McDONALD, Judge:

This appeal and cross-appeal involve the legality of a demotion given to a health coordinator, allegedly an administrative position. The demotion was obtained through the abolition of the previous position, and the appellant was demoted to the position of classroom teacher.

Findings of fact and conclusions of law with judgment were entered by the trial court. There was no subsequent motion made to alter or amend the court's findings or judgment.

Cecil Petett served as health coordinator of the Monroe County Board of Education. As such he oversaw the correct record keeping of physical examinations and immunizations of the students, inspected the high school and four elementary schools for safety, advised the principals regarding health hazards, and filed frequent reports to the superintendent. Before the 1981–82 school year Petett, in addition to holding the position of coordinator of health, also served as director of transportation.

Prior to the school year in question Petett was persuaded by superintendent James Graves to relinquish the director of transportation position. At the time Petett was receiving a salary of $20,800 for both positions. His salary remained the same after he relinquished the position, while the new director of transportation was hired at a salary of $28,000.

Petett asserts that his problems began when James Graves became superintendent of the Monroe County board on July 1, 1981. Graves began a campaign to demote Petett under the guise of financial restrictions of the school board budget. This financial tightening required the abolition of his position as health coordinator. Petett maintains he could not be demoted without "cause" under K.R.S. 161.765. However, if his position was eliminated for fiscal reasons, and there were no other administrative positions available, then he would be required to fall back to his certified

teaching position if he wanted to be employed at all.

While there was no direct proof of a personal vendetta by Graves against Petett, Petett demonstrates by implication that there was a conspiracy against him by the following facts: (1) Graves ordered a base budget forecast, never before ordered in the history of the school system, which showed a financial strain upon the revenues of the school system for the upcoming school year. This forecast formed the basis of abolishing the position of health coordinator, outwardly for the sole purpose of saving money.

(2) During this time of tight money the real budget reflected $36,000 of interest earnings on an investment of $300,000 of idle cash, with $96,900 available for contingencies; a director of transportation was salaried at $28,000 and his previous position as elementary principal had to be filled for his replacement at a matching salary; $4,000 was spent for lights for a baseball field for the school which was not used at night; $6,000 was spent for a new computer; two additional teachers were hired for the board over the previous year and five principals' salaries were raised $1,500, with teachers' salaries increasing 5 percent across the board.

The tight money squeeze which caused the appellant's demotion, thereby reducing his salary from $20,870 to $16,260, resulted in a savings to the district of $4,610. On the other hand, during this tight fiscal squeeze money was lavishly spread among the other employees. It was obvious to the appellant what was going on.

The trial court made these findings: (1) In the interest of a tight budget the superintendent assumed the title and some of the duties of health coordinator at no extra pay for the school system. (2) He delegated the remaining duties of that position to the principals of the various schools for performance without additional pay. (3) Because Petett did not have an administrative certificate, he could not be employed in an administrative position. (4) Petett's certificate was for teaching, and the position that

he held as health coordinator and director of transportation required no certificate. (5) There was no evidence of political retaliation against Petett. (6) The superintendent and board made other reassignments and refused to renew several limited contract teachers for economic reasons. (7) The Monroe County Public School System was in fact overstaffed, and local school funds were insufficient to pay the expense of the overstaffing. (8) The most significant expense item of the school system was the salary of the employees.

The trial court dismissed Petett's complaint and concluded that the transfer of Petett to classroom teacher conformed with all the requirements of law and that the board was justified in its action.

Appellant's first assignment of error is that the abolition of his administrative position and his demotion were without adequate notice or specification of charges and were therefore fundamentally illegal.

*Snapp v. Deskins,* Ky., 450 S.W.2d 246 (1970), impresses upon us that arbitrariness is the keystone to whether a work assignment transfer is valid. Superintendents and boards may not demote and transfer persons without a valid reason; to do so without justification amounts to arbitrary action. However, the appearance of no legitimate reason for transfer is not sufficient to invalidate the action where there is absent an inference of arbitrariness. Of most comfort to the appellant is *Hartman v. Board of Education of Jefferson County,* Ky.App., 562 S.W.2d 674 (1978), which involved the demotion of counselors for alleged budgetary reasons. This court found in that case that the notice of such demotions was without reasons whatsoever, which amounted to arbitrary action. We comment, however, in the present case, that *Hartman* was fully complied with by the Monroe County Board of Education.

What clearly strikes us is that our review is limited to a determination of whether the findings of fact are clearly erroneous. *See Hart County Board of Education v. Broady,* Ky.App., 577 S.W.2d 423 (1979). Because there existed evidence and inferences

from evidence to support the trial court's findings, we cannot, on appeal, disturb the findings. We will comment, though, that there was evidence on behalf of the appellant's cause.

Next, the appellant contends that the abolition of his position and his demotion solely because of predictions made by the board and the superintendent based on an unreliable forecast were arbitrary and illegal.

Petett argues that the requirement of "cause" for demotion and due process necessitates that the charges be definite and certain. In this instance when one compares the cause of the demotion, i.e. a tight budget, with the amount of money spent by the school system, it is indicative that appellant's demotion was arbitrary and without cause. Further, because appellant's work performance was not questioned, he should have been given notice and an opportunity at the hearing of the budget to pose alternatives to his demotion as possible cures for the tight budget.

The appellees argue that Petett has no standing to complain because he was not an administrator as that term is used and defined in K.R.S. 161.720(8). The only certification that Petett possessed was a teacher's certificate. This issue is more pointedly addressed in appellees' cross-appeal by the query: What is meant by "administrator"?

We get no help with this question from prior decisions; however, the overall statutory scheme of K.R.S. Chapter 161 will form the basis for our answer. It is agreed that a teacher must be certified before he is eligible to be an administrator. K.R.S. 161.720(8), which reads as follows, relates that an administrator is one whose position is so categorized by the statute:

The term "administrator" for the purpose of KRS 161.765 shall mean a certified employe, below the rank of superintendent, who devotes the majority of his employed time to service as a principal, assistant principal, supervisor, coordinator, director, assistant director, administrative assistant, finance officer, pupil personnel worker, guidance counselor, or school business administrator, or who holds a position in which he evaluates or supervises board employees or recommends personnel for employment or discharge. The term "administrator" shall also include those assistant, associate or deputy superintendents who do not fall within the definition of "superintendent" as set forth in subsection (7) of this section.

Therefore, being in a statutorily categorized administrative position is only one of the requirements: One must also be certified for that position by the State Board of Education.

First, let us discuss Petett's argument, which runs contrary to our current of thought. Petett argues that K.R.S. 161.-720(8) requires only that he be a "certified employe," which he is as a teacher, and to hold a categorized position, which he did as health coordinator. These two requirements being satisfied, he argues, gives him the protection of K.R.S. 161.765, which provides for the procedure of demotion of administrative personnel. Petett asserts that as an administrator he was unlawfully denied the shield of the due process procedure afforded him under the statute.

In answer, we say that in Petett's situation he would qualify in one requirement for holding an administrative position in that he was a certified teacher. The incidental requirements were also satisfied, such as the three-year on-job requirement, devoting full time to the position, and so forth.

We conclude Petett also qualifies in the next significant requirement, that being the categorization of the position he held as health coordinator. While the relevant statute, K.R.S. 161.720(8), describes "coordinator" without descriptive qualification, we are persuaded that "health coordinator" is a protected position within the statute because State Board of Education Administrative Regulation 704 KAR 3:010(17) specifically lists "school health coordinator" as

a classroom position for administrative and special instructional services.

■ The last significant requirement for an administrative position, however, is not satisfied in Petett's case. The one holding the described position is required to be certified by the State Board of Education. To us this requirement means that the "certified employe" under K.R.S. 161.720(8) must be certified as to the position held, i.e., a certified coordinator, not merely certified as a teacher and incidentally holding an administrative-type position. To express it in different terms, we believe the statute requires that the position itself be certificated and that the employee also be specifically certified for the position, before the due process provisions of K.R.S. 161.-765 are triggered.

We reach this conclusion because we believe uniformity requires it. K.R.S. Chapter 161 applies throughout the state, but we must also deal with 120 local school boards, all of which are autonomous to a degree. One such local board may create and designate a position as scheduling coordinator, another may have a curricula coordinator, and yet another may have some other type coordinator. The local boards may have intended to create an administrative position; nevertheless, in the overall scheme of things, it is provided through K.R.S. 161.030: "(1) The certification of all teachers and *other school personnel* is vested in the [State Board of Education]." (Emphasis ours.)

■ In conjunction therewith, K.R.S. 161.020 provides: "(1) No person shall be eligible to hold the position of superintendent, principal, teacher ... or other public school position for which certificates may be issued ... unless he holds a certificate of legal qualification for such position." This review leaves us with the inescapable conclusion that while Petett held an administrative position, he was not certified as such by the State Board of Education, and was therefore not technically qualified for such position. Because he was not certified, his transfer from the position of health coordinator to teacher was made

according to law, and his due process rights were not offended. We do not find appellees' citation of *Crawley v. Bd. of Ed. of Marion County, Ky.*, 658 F.2d 450 (6th Cir.1981), to be on point. That case dealt with a supervisor of transportation, a non-certified position, whereas in this case the position of health coordinator is a certified position. *See* 704 KAR 3:010(17).

Therefore, in answer to the question, "Who is an administrator?" we conclude that an administrator is one who (1) holds a position categorized as an administrative position pursuant to K.R.S. 161.720(8), or pursuant to approval by the State Board of Education of the position as a certified administrative position; and (2) is duly certified by the State Board of Education as an administrator.

For the reasons stated in this opinion, the judgment of the trial court is affirmed on direct appeal and the cross-appeal is dismissed.

All concur.