## TAGGART v. KEEBLER.

[No. 25,329. Filed December 22, 1926.]

1. TRIAL.—*Inconsistent answers to interrogatories do not control the general verdict.*—Inconsistent answers to interrogatories submitted to a jury nullify one another and, therefore, do not have any effect in controlling the general verdict. p. 636.

2. TRIAL.—*Repeated admission of testimony, that defendant said he was heavily insured was reversible error in trial of action for personal injuries.*—In an action for personal injuries from being struck by defendant's automobile, the repeated admission of testimony, over objection, that defendant had said he was heavily insured was reversible error, although, in one instance, defendant's motion to strike out the evidence was sustained and the jury instructed to disregard such testimony. p. 638.

3. TRIAL.—*Instruction that declarations of defendant that he was heavily insured should be considered only as admission of liability for injuries sued for held prejudicial error.*—In an action for personal injuries from being struck by an automobile, where several witnesses had been permitted to testify that defendant had said he was heavily insured, an instruction that such admissions should be considered only as tending to prove his acknowledgment of his responsibility for the injuries, was prejudicial error. p. 638.

4. APPEAL.—*Error in permitting eight witnesses to testify that defendant had admitted he was heavily insured could not be cured by an instruction.*—Error in the admission of testimony, over objection, by eight witnesses that the defendant had declared he was heavily insured could not be cured by an instruction that the jury should disregard such testimony in an action against him for personal injuries received by a bicycle rider who was struck by the defendant's machine. p. 638.

5. EVIDENCE.—*Exclusion of evidence that plaintiff in action for personal injuries, who claimed prior good health, had recently received increased pension of permanent disability, was reversible error.*—In an action for personal injuries where the plaintiff had testified that his health had been fairly good before the injury and that he had worked continuously at one factory for more than twenty years, it was error to exclude testimony that, before the injury, he had been granted an increase of pension as a Spanish War veteran under the act of 1920 which increase of pension was allowed for "physical disability of a permanent character" which incapacitated the pensioner

"from the performance of manual labor" to such an extent as to render him unable to earn a support, as such testimony might have some bearing on his credibility as a witness. p. 640.

6. EVIDENCE.—*Courts have judicial knowledge of acts of Congress, and it is not error to refuse proof of their provisions.*—Courts have judicial knowledge of laws in force at place where they are sitting, including acts of Congress, and it is not error to refuse to admit evidence of the provisions of an act of Congress. p. 642.

7. TRIAL.—*United States law pertinent to a case may be placed before the jury by requesting instruction stating such law.*—Where the provisions of an act of Congress are pertinent to the issues on trial, such provisions may be placed before the jury by asking an instruction stating so much of the law as is applicable to the case made by the evidence, as it is the duty of the court, under §584 Burns 1926, when properly requested, to declare all the law applicable to the case. p. 642.

8. APPEAL.—*Refusal of instruction based on facts which the jury found not to exist held not prejudicial.*—Where the jury, by answers to interrogatories, found that the facts did not exist on which a requested instruction purported to declare the law, the refusal to give such instruction cannot be deemed prejudicial error. p. 642.

From Elkhart Superior Court; *William B. Hile,* Judge.

Action by George Keebler against Quimby N. Taggart. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under cl. 2, §1357 Burns 1926). *Reversed.*

*Arthur L. Gilliom, Harman & Jay* and *Fenton, Steers, Herbst & Klee,* for appellant.

*Church & Chester, W. S. Carlisle* and *Parker, Crabill, Crumpacker & May,* for appellee.

PER CURIAM.—Appellee, who was the plaintiff below, recovered a judgment against appellant, the defendant below, for $5,000 damages on account of injuries sustained when an automobile driven by defendant collided with a bicycle on which plaintiff was riding. Overrul-

ing defendant's motion for judgment on the answers to interrogatories returned with the general verdict and overruling his motion for a new trial are assigned as errors.

The complaint alleged, in substance, that shortly after noon on December 2, 1920, plaintiff was riding his bicycle south on Michigan street in the city of South Bend, traveling on a line approximately four feet west of the west rail of the street car track, which was in the center of the street. That defendant was riding in and operating a large automobile in the same direction on that street, and when plaintiff reached a point about thirty feet north of where the south line of Elder street intersects the east line of Michigan street, defendant ran his automobile against plaintiff's bicycle on which he was riding, and thereby caused him to be thrown to the pavement, after which defendant drove the automobile upon and over plaintiff and pushed and dragged him twenty-five feet. That this was at a place where the city was closely built up and near a schoolhouse, and that defendant was negligently and recklessly driving at a speed exceeding twenty miles per hour. That, in approaching plaintiff from behind, defendant had a clear and unobstructed view of him, but negligently failed to give any warning or signal of any kind. That thereby plaintiff was injured in certain particulars named, and though he was previously a strong, healthy man earning $125 per month, he had not been able to earn anything since, and was permanently injured so that he probably never would be able to earn any money again. And that he was run upon, struck and injured because of the carelessness and negligence of the defendant, as stated, and not because of any fault or negligence on his part. The answer was a general denial, and a second paragraph setting up a city ordinance requiring that any vehicle turning toward the left into

another street should pass to the right of and beyond
the center of the street intersection before turning, and
alleging that defendant negligently turned to the left
in front of plaintiff's automobile to go upon an inter-
secting street when he was thirty feet north of the
center of the intersection, and thereby negligently drove
his bicycle immediately in front of plaintiff's automo-
bile without any warning, and was struck and injured
by reason of his own negligence in so doing, and not
because of any negligence of the defendant.   The reply
was a general denial.   Overruling defendant's motion
for a new trial and his motion for judgment on the an-
swers to interrogatories notwithstanding the verdict are
assigned as errors.

The jury returned a general verdict in favor of plain-
tiff and answered twenty-eight interrogatories.   One of
the answers stated that the left wheel of defend-
ant's automobile was traveling eighteen inches
from the east rail of the west street car track
when the accident occurred.   Another that plaintiff was
traveling four feet west of the west rail of the west
street car track "before he made any turn to the left."
But in answer to other interrogatories the jury found
that plaintiff did not turn his bicycle to the left and in
front of the approaching automobile of the defendant
just before the collision, and did not turn to the right
immediately after turning to the left and just before
he was struck, and there was nothing in the answers
to the interrogatories contradicting the allegations of
the complaint, which the general verdict found to be
true, to the effect that the collision took place only thirty
feet north of the south line of the intersecting street
and that defendant ran against plaintiff from behind
at the rate of twenty miles an hour when he had an
unobstructed view of him, and dragged him twenty-five
feet after running over him; nor was there any finding

to the effect that the plaintiff had turned or started to turn into the intersecting street at the time he was struck. . The answers that were inconsistent with each other nullified each other, and could have no effect in controlling the general verdict. *Cleveland, etc., R. Co.* v. *Wolf, Admr.* (1920), 189 Ind. 585, 593, 128 N. E. 695; *General, etc., Car Corp.* v. *Melville* (1926), *ante* 529, 145 N. E. 890, 893. No error was committed in overruling the motion for judgment on the answers to interrogatories.

Repeatedly witnesses were permitted to testify that, at different times and places soon after the accident, in connection with admitting his liability, the defendant had said: "I am heavily insured." In each instance, the defendant objected and reserved an exception, and each of these rulings is specified as a cause for a new trial. Once the statement of which this constituted part was stricken out, and once the part of the answer stating what defendant had said about being insured was withdrawn, after a motion to strike it out on the ground that it did not tend to prove or disprove any of the issues and was calculated to prejudice the jury had been overruled, and, at the time it was withdrawn, the jury was instructed that it should not consider any matter which had been stricken out. But after such withdrawal, the same witness repeated his former answer, and defendant's motion to strike out the reference to being insured was again overruled. One of the witnesses having testified that he went to the hospital with plaintiff and defendant, the plaintiff being unconscious, and that the nurse who received them inquired who the injured man was and if he had any money, when defendant said: "I do not know. I am responsible for this case and will see that he is taken care of," and directed the nurse to give him the best of care. After this witness had been excused, he was re-

called by the plaintiff, and, over an objection, was permitted to state, in answer to the question whether he had related everything that defendant said at the hospital, that "He said, 'I am heavily insured.'" And he then repeated his former answer as to what defendant had said with the addition of the words "And I am heavily insured," to all of which defendant excepted. But the defendant denied having made any of the statements attributed to him by which he admitted his liability for the injury or said that he was insured, in which he was supported in part by other witnesses.

It thus appears that evidence was again and again admitted, over objections on behalf of the defendant, that he had stated a number of times that he "was heavily insured," and that motions to strike out such testimony were repeatedly overruled.

Evidence that the defendant was insured was not competent and its admission clearly was prejudicial, and, under all the circumstances disclosed by the record at bar, was harmful. *Martin* v. *Lilly* (1919), 188 Ind. 139, 144, 146, 121 N. E. 443; *Simpson* v. *Foundation Co.* (1911), 201 N. Y. 479, 490, 95 N. E. 10; *Akin* v. *Lee* (1912), 206 N. Y. 20, 23, 99 N. E. 85; *Curran* v. *Lorch* (1913), 243 Pa. St. 247, 90 Atl. 62; *Shay* v. *Horr* (1914), 78 Wash. 667, 139 Pac. 604; *Kellner* v. *Christiansen* (1919), 169 Wis. 390, 172 N. W. 796; *Trent* v. *Lechtman Printing Co.* (1910), 141 Mo. App. 437, 452, 126 S. W. 238; *Carter* v. *Walker* (1914), 165 S. W. (Tex. Civ. App.) 483.

The trial court gave an instruction to the effect that evidence of conversations in which the defendant stated, in substance, that he was heavily insured had been admitted, and added: "Whether the defendant was or was not insured has no bearing on the issues involved in this case. The testimony was introduced by the plaintiff only as a part of a complete

statement said to have been made by the defendant, and the complete statement as bearing upon and as tending to prove an acknowledgment by defendant that he was at fault and responsible for the injuries sustained by the plaintiff, and was admitted for that purpose and no other, and these alleged statements should be considered by you only in that connection." It will be noted that so far from telling the jury the evidence of the many statements by defendant that he was "heavily insured" should not be considered for any purpose, this instruction directed the jury to consider them "as bearing upon and tending to prove an acknowledgment by defendant that he was at fault and responsible for the injury." Instead of curing the error in admitting evidence that the defendant had said he was heavily insured, this instruction aggravated whatever damage had been done to defendant's case by the admission of that evidence. The defendant denied he ever had said anything which constituted an admission that he was liable, and persons who were present at some of the conversations in which plaintiff's witnesses said he had made such admissions testified that he did not say he was heavily insured. As applicable to this conflict of evidence, it is not improbable that the jurors may have accepted the instruction as authority for inferring that defendant freely and repeatedly acknowledged himself liable in damages for plaintiff's injury because he was "heavily insured" and did not expect to pay the damages and expenses from his own pocket. An instruction that the jury might consider the alleged statements by defendant that he was heavily insured as tending to prove an acknowledgment that he was at fault and responsible for the injuries sustained by the plaintiff was even more prejudicial than the admission of the evidence without such an instruction. In any event, we do not think the admission, over objections by the de-

fendant, of testimony by these witnesses that defendant had said he was heavily insured, and the overruling of defendant's motions to strike out the evidence to that effect, could be cured by a mere instruction that the jury should not consider the incompetent evidence thus brought so forcibly to its attention or should only consider it in determining the existence or non-existence of a fact which it was not admissible to prove. "One party may not be permitted to get the other into a dying condition and then expect the court to revive him by instructions." *Martin* v. *Lilly, supra,* page 146. No question is before us as to the effect of an instruction to disregard incompetent evidence after it had been volunteered by a witness or otherwise heard by the jury without the fault of counsel, where the court promptly and with the acquiescence of counsel, did all that could be done to withdraw it from consideration by the jury, and concerning the effect of instructions in such a case, we decide nothing.

Plaintiff testified that at the time of the accident, in December, 1920, his health was "fairly good" and that he had worked at Studebakers continuously for 5. thirty-four years, except about eight or nine months during the Spanish-American war when he was in the army. That he had a sunstroke on the first day of June, 1898, from which he had not fully recovered, but that he went back to work at Studebakers about the middle of December, 1898, and had worked steadily ever since. That he had worked in the wheel room on a woodworking machine until five or six years before the trial, when he began "working as a clerk, doing clerical work at Studebakers," his work being as a timekeeper, for which he received $125 per month. And when the case was tried in November, 1923, plaintiff testified that if there was an opening he "could do

the work I was doing before I was hurt," and that this was "timekeeping." After the plaintiff had testified on cross-examination that he was drawing a pension from the United States as a veteran of the Spanish-American war, and that he had made an application under the act of Congress of June 5, 1920, for an increase of his pension, defendant offered to prove on further cross-examination, in answer to questions asked of the plaintiff, that he was familiar with the terms of said act of Congress, and that, upon his application, he was granted an increase of his pension in the amount of $12 per month, but objections were sustained to the questions asked. The act of June 5, 1920, to which reference was made provides that honorably discharged soldiers of the war with Spain, (among others), "suffering from any mental or physical disability or disabilities of a permanent character not the result of their own vicious habits, which so incapacitates them from the performance of manual labor as to render them unable to earn a support," may receive a pension "not exceeding $30 per month and not less than $12 per month, proportioned to the degree of inability to earn a support; and in determining such inability each and every infirmity shall be considered and the aggregate of the disabilities shown to be rated." The offered evidence should have been admitted. The fact that plaintiff, drawing a pension under this statute, had applied for and obtained an increase of $12 per month before his injury, although he testified in this action that his health was fairly good, and that he had worked continuously at the Studebaker factory for more than twenty years after he left the army and before he was injured, might have some bearing, in the opinion of the jury, upon the question of the weight of his testimony in this action. And although it might not have had much influence with

the jury, yet because it had some bearing on the credibility of the plaintiff as a witness, it should have been admitted.

The court did not err in refusing to admit evidence of the provisions of said act of Congress. Courts have judicial knowledge of the laws in force at the place where they are sitting, including acts of Congress that are in force there and what is judicially known need not be proved. *Baltimore, etc., R. Co.* v. *Berdon, Admr.* (1924), 195 Ind. 265, 272, 275, 143 N. E. 677; *Wabash R. Co.* v. *Priddy* (1913), 179 Ind. 483, 494, 101 N. E. 724; *State, ex rel.,* v. *Gramelspacher* (1891), 126 Ind. 398, 403, 404, 26 N. E. 81; *Hamilton* v. *Shoaff* (1884), 99 Ind. 63, 67. If the provisions of this act were pertinent to the issues on trial, defendant's remedy was by asking an instruction declaring the law as thereby enacted, so far as it was applicable. And, on proper request, he would be entitled to a declaration of the law and all the law applicable to the case made by the evidence under the issues. *Woolery, Admr.,* v. *Louisville, etc., R. Co.* (1886), 107 Ind. 381, 386; *Carpenter* v. *State* (1873), 43 Ind. 371, 373; *Welch* v. *Watts* (1857), 9 Ind. 115; §584 Burns 1926, §533 R. S. 1881.

Where the jury, by its answers to interrogatories, found that the facts did not exist upon which a requested instruction purported to declare the law, the refusal to give such instruction cannot be deemed to have been prejudicial error. *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467, 475, 476, 80 N. E. 415; *Travelers Ins. Co.* v. *Fletcher, etc., Nat. Bank* (1925), 84 Ind. App. 563, 150 N. E. 825, 829.

For the errors indicated, the judgment is reversed, with directions to sustain appellant's motion for a new trial.