## ACME-EVANS COMPANY *v*. SCHNEPF.

[No. 27,037. Filed April 28, 1938. Rehearing denied July 7, 1938.]

*Bert Beasley, Fenton, Steers, Beasley & Klee, Parr, Parr & Parr,* and *James C. Jay,* for appellant.

*Burdette Little, Harry C. Hendrickson,* and *Rogers & Smith,* for appellee.

TREMAIN, J.—This was an action by the appellee against the appellant to recover damages for personal injuries sustained by reason of the alleged negligent operation of a truck, owned and controlled by appellant, at the intersection of Shelby and Wade Streets in the City of Indianapolis.

It was alleged in the first paragraph of complaint that: Shelby Street extended north and south, was paved, and was forty feet wide from curb to curb; two parallel street car lines occupied the center of the street; a six-foot sidewalk occupied each side of the street; Shelby Street was intersected by Wade Street, which extended east therefrom and was twenty-four feet wide from curb to curb, paved with asphalt and brick, and had a five-foot sidewalk on each side. That, at the time

of the grievances hereinafter described, there was a city ordinance in force which provided that the operator of any motor vehicle should yield the right of way to a pedestrian crossing the roadway within the marked or unmarked crosswalk at the end of a block, except crossings where the movement of traffic was controlled by a police officer or traffic signal; that Wade Street, at its intersection with Shelby Street, was at the west end of a block and was crossed by an unmarked crosswalk ten feet wide, which was the east sidewalk line of Shelby Street, at which place the traffic was not controlled by a police officer or traffic signal; that on December 17, 1931, at 12:10 o'clock P. M., plaintiff was walking south on said crosswalk and had reached a point south of the center of Wade Street when the defendant (appellant), by its duly authorized employee, negligently and unlawfully operated a motor truck in violation of said ordinance, and refused and neglected to yield the right of way to the plaintiff, and by the exercise of due care could have seen, and did see, plaintiff, but, notwithstanding, operated and propelled said truck across the crosswalk and violently struck plaintiff, inflicting serious and permanent injuries.

The second paragraph of complaint, in addition to the allegations contained in the first paragraph, alleged that at the time and place the truck was traveling north on Shelby Street in a closely built-up and residential section of the city; that the day was clear and the pavement dry, and several school children, of which plaintiff was one, were on the sidewalk on the north side of Wade Street approaching the intersection of Wade and Shelby Streets; that a large number of motor vehicles were passing north and south on Shelby Street; that, as plaintiff was walking across Wade Street at said intersection, the defendant, by its employee, was operating a motor truck north on Shelby Street, and by due care

could have seen, and did see, plaintiff crossing the street, but negligently and unlawfully operated said truck into the intersection by turning to the right onto Wade Street at a rate of speed greater than was reasonable and prudent, having regard to the conditions present, at a speed of 15 or 20 miles per hour, and thereby struck and permanently injured plaintiff.

The third paragraph of complaint described the obstructions of the view of the driver of the truck, and alleged that he turned onto Wade Street without slowing the speed of the motor truck or giving any signal or warning.

The fourth paragraph was based upon the theory that the truck was operated in a reckless and negligent manner, not safe and prudent, and so as to endanger the life and limb of plaintiff.

The fifth paragraph alleged that the truck was operated, at the time and place, with reckless disregard of the rights of the plaintiff, and was willfully driven onto and against the plaintiff, inflicting the injuries described.

A general denial was filed to the complaint. The cause was tried by a jury resulting in a verdict and judgment for the plaintiff in the sum of $6,000. The appellant filed a motion for a new trial, which was overruled. This ruling is assigned as error in this court.

The appellant asserts that the damages assessed are excessive as shown by the "circumstances of this case," and bases the circumstances particularly upon the testimony of certain doctors who testified for appellant and appellee. It asserts, in its points under this proposition, that "incidents occurring at the time which may well have operated to inflame the minds of the jury may lead the court to reverse a verdict which might have been permitted to stand if the trial had been free from such prejudicial incidents," and then says that it appears that the damages were assessed by a jury

influenced by improper conditions. None of the conditions or facts upon which the appellant relies are recited either in its propositions or points. The testimony of the physicians for appellant and appellee was conflicting. The evidence shows that the appellee was a normal, active boy, seven and one-half years of age, at the time of the accident; that as a result of the accident he was rendered unconscious and irrational for several days; that he suffered concussion of the brain; that both femurs were crushed and broken; that numerous scars were shown upon his body; that there was a fistula in the right thigh for months; that his left leg was rendered about one inch shorter than the right; that he underwent serious operations in reducing the fractured femur bones; that it was necessary and he was suspended by his feet for a long time on a fracture bed; that after leaving the bed he was in a wheel chair and on crutches for many months; that his suffering was severe; that symptoms have followed the concussion of the brain which might result in epilepsy; that a finger was broken; and physicians testifying for the plaintiff stated that his injuries were permanent. If the testimony of the plaintiff's witnesses is to be believed, the jury was justified in reaching the verdict returned. There is no indication that the jury was controlled by bias or prejudice. It is well settled that this court cannot weigh evidence, and no reason is shown to justify a reversal on the ground of excessive damages.

The appellant predicates error upon the refusal of the court to give its tendered instructions Nos. 54 and 55, as follows:

No. 54
"If you find that plaintiff suddenly and without warning ran from the sidewalk into the traveled part of Wade Street, at a point east of said crosswalk and into defendant's truck, and defendant's driver did not see or know of the presence of plain-

tiff at said point and could not have seen or known of his presence at said point, in the exercise of ordinary care, in sufficient time to have avoided said plaintiff's injuries in the exercise of ordinary care, then your verdict should be for the defendant."

No. 55

"If you find that plaintiff suddenly and without warning, ran into the traveled part of Wade street at a point east of said cross-walk and behind an automobile approaching Shelby Street and into or in front of defendant's truck, and defendant's driver did not see or know of the presence of plaintiff at said point and could not have seen or known of his presence at said point, in the exercise of ordinary care, in sufficient time to have avoided said plaintiff's injuries, in the exercise of ordinary care, then your verdict should be for the defendant."

To sustain the action of the trial court, the appellee asserts that there is no evidence to which the instructions are applicable, and that appellant does not point out and refer to any such evidence, or any evidence showing that appellant's driver operated the truck with due care, or from which such inference could be reasonably inferred. A careful reading of the testimony given at the trial reveals that the instructions were submitted by the appellant upon the theory of its defense. If there is any evidence in the record disclosing that the appellee suddenly and without warning ran from the sidewalk into the traveled part of Wade Street at a time and place where the driver of appellant's truck could not and did not see him, in the exercise of ordinary care, the instructions should have been given. The appellant, as well as the appellee, is entitled to an instruction upon its theory.

There is evidence in the record which would warrant the instructions. Two school boys, who acted as traffic officers at the crossing, testified that they preceded the appellee to the crossing; that the appellee had not reached the crossing at the time they were proceeding

to it; that they first saw appellee when he was lying in the street injured. The driver of the truck testified that he first saw appellee as he was nearing the front left wheel of the truck and just before he came in contact with it. There was some evidence that another car was approaching Shelby Street from the east on Wade Street. The appellant's theory is that the appellee ran across Wade Street before he came to the crosswalk, and that he suddenly emerged from behind the other car and ran into the appellant's truck. This testimony was sufficient to warrant the giving of these instructions, which are clear-cut instructions upon appellant's theory. The instructions are not covered by other instructions given, applicable to the facts, viewed from the standpoint of the appellant. It was vital to the appellant to have these instructions read to the jury. It seasonably requested that they be given. It must be held that the refusal to give the instructions constitutes reversible error. *Muncie, etc., Traction Co.* v. *Sheffer* (1919), 69 Ind. App. 395, 402, 122 N. E. 9; *Prudential Ins. Co.* v. *Dolan* (1910), 46 Ind. App. 40, 44, 91 N. E. 970; *Detwiler, Admx.* v. *Culver Military Academy* (1930), 91 Ind. App. 355, 359, 168 N. E. 246.

Doctor Ebert, the attending physician, was called by appellee to testify in chief. A full description was given as to his physical condition from the time the doctor saw him until the trial. After fully describing appellee's injuries, the doctor stated that the injuries were permanent. He was asked as to the "degree of disability vocationally" of appellee, to which he answered that he could not say, because he would have to take into consideration the type of work appellee was doing. He was then asked the following question:

"Q. Assuming he engaged in manual labor?

"A. In manual labor I would say 60 to 70 per cent reduced.

"Q. Take particular instance of working in factory or grocery what degree would you say?

"A. 60 per cent.

"Q. What would be your opinion if he were engaged in lifting heavy objects?"

Objection was made by appellant to these questions, for the reason that the doctor was not shown to be qualified to give an opinion on that subject; that an expert cannot express an opinion on the precise fact which is in issue before the jury; and that "the form of the question propounded to the witness, Doctor Ebert, did not permit the jury to ascertain the basis on which the witness relied to reach the conclusion stated in his testimony." It will be noted that the doctor was not testifying as an expert in answer to a hypothetical question, but was testifying from the facts and conditions of which he had personal knowledge, all of which had been detailed to the jury before the question objected to was propounded to the witness. The jury was fully advised as to the nature of appellee's injuries by the testimony of several physicians and other witnesses. The questions afforded another means or method for the basis of the doctor's opinion that the injuries were permanent. He possessed scientific skill which enabled him to say not only that the injuries were permanent, but to express an opinion as to the degree of the impairment. The appellant could not be affected injuriously by the questions and answers. It was a subject upon which a physician is qualified to express his opinion. The weight to be given to the testimony was a question for the jury.

The appellant predicates error upon the refusal of the court to permit it to introduce and examine Doctor Allen. The facts disclose that Doctor Allen was the first physician called to attend the appellee at the time he sustained the injuries, and that he

treated appellee for a few weeks. The appellee's father then discharged Doctor Allen and called other physicians and surgeons. The appellee's illness continued over a long period of time, both in the hospital and in his home. Upon the trial the appellee called the other physicians who attended him during his illness, but he did not call Doctor Allen. There is nothing in the record disclosing that the physicians who cared for appellee, after Doctor Allen was discharged, based their testimony upon any information received from Doctor Allen.

The fourth clause of Sec. 2-1714 Burns' Ind. St. 1933, §303 Baldwin's Ind. St. 1934, provides that "physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases," shall not be competent witnesses. Did the appellee waive his privilege under the statute by calling other physicians? The construction of this statute has been before this court numerous times. Attention is directed to *The Masonic Mutual Benefit Association* v. *Beck* (1881), 77 Ind. 203, 40 Am. Rep. 295. This was an action by the widow of the insured against the appellant upon a policy of insurance. The appellant offered the deposition of the attending physician of the deceased. Objection to its introduction was sustained. The appellant argued that it was admissible in evidence unless it appeared affirmatively that the information was *confided* to him, and that he was privileged to testify as to what he had learned by observation and examination of the patient. This court held that the statute was designed to have a broader scope; that (pp. 209, 210) :

> "The relation of physician and patient, no matter what the supposed ailment, should be protected as strictly confidential, subject only to the right of the patient to waive the restriction . . .
> "His admission to the bedside of the sick one may enable the experienced and skilful practitioner to

discern more of the patient's condition and of the cause which brought it about, than the patient himself could tell, or would be willing to reveal . . . 'A dumb patient and one whose vocal organs have been paralyzed, are equally protected by the statute with others. . . . The statute seals the lips of the physician against divulging in a court of justice the intelligence which he acquired while in the necessary discharge of his professional duty. It was enacted for the purpose of extending to the relation between a patient and his physician the same rule of public policy by means of which the common law protected the professional confidence necessarily existing between a client and his attorney.' "

The quotation serves to illustrate the breadth of the statutory provision, and has been so held throughout the history of this court. *Excelsior Mutual Aid Assn.* v. *Riddle* (1883), 91 Ind. 84; *Penn Mutual Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 50 Am. Rep. 769; *Williams* v. *Johnson* (1887), 112 Ind. 273, 13 N. E. 872; *Heuston* v. *Simpson* (1888), 115 Ind. 62, 17 N. E. 261, 7 Am. St. 409; *Gurley* v. *Park* (1893), 135 Ind. 440, 35 N. E. 279; *Springer* v. *Byram* (1894), 137 Ind. 15, 36 N. E. 361, 23 L. R. A. 244, 45 Am. St. 159; *Aspy* v. *Botkins* (1903), 160 Ind. 170, 66 N. E. 462; *Towles* v. *McCurdy* (1904), 163 Ind. 12, 71 N. E. 129; *Indianapolis, etc., Transit Co.* v. *Hall* (1905), 165 Ind. 557, 76 N. E. 242; *Cincinnati, etc., R. Co.* v. *Gross* (1917), 186 Ind. 471, 114 N. E. 962; *Post* v. *State ex rel. Hill* (1896), 14 Ind. App. 452, 42 N. E. 1120; *Warsaw* v. *Fisher* (1900), 24 Ind. App. 46, 55 N. E. 42; *Hays* v. *Hays* (1912), 49 Ind. App. 298, 97 N. E. 198.

In many of the foregoing decisions this court has expressed, in the strongest terms, its disapproval of permitting a physician, over the objection of the patient, to testify to facts learned in the sick room, even where other physicians have testified for the patient.

The appellant cites and relies upon the recent case of

*Schlarb* v. *Henderson* (1936), 211 Ind. 1, 4 N. E. (2d) 205. In that case three physicians examined the appellee, who sustained injuries and thereafter filed an action to recover damages. Appellee called two of the physicians as her witnesses. The third physician, who assisted in the examination and made a laboratory test of the tissues taken from appellee's body, was not examined by her, but was called as a witness for the defendant, and, over objection, was permitted to testify as to the pathological condition of the tissues examined. The question involved was the condition of appellee's appendix. It was her position that the operation for the removal of her appendix was caused by reason of the injuries sustained. The defendant claimed that its condition was due to chronic causes. The two physicians whom she examined based their testimony, in part, upon information received from the third physician's microscopic examination. It was held, in the case cited, that the third physician was privileged to testify when called as a witness for the defendant, for the reason that the plaintiff had opened the question and waived the protection of the statute, which insured privacy concerning such matters. In the case at bar, such condition does not exist. Doctor Allen did not attend the appellee in connection with the other physicians, nor was their testimony based upon information received from him.

Appellant insists that appellee's submission to an examination by Doctor Allen three weeks before the trial, for the purpose of using him as a witness, amounted to a waiver of the privilege. This position is without merit. It was appellee's privilege to call or not call Doctor Allen as a witness. There was no error in excluding his testimony.

The appellee, throughout his brief, has insisted that appellant has failed to comply with Rule 21 of this

court in the preparation of its propositions, points, and authorities. Appellant's brief is prepared in an unorthodox manner by citing cross-references to other pages in the brief or record where the proposition may be found. It is prepared in such manner, however, that the court easily ascertained the proposition and point presented. The appellee is not in a position to object to the manner of the preparation of appellant's brief, because, in his petition for an extension of time, he expressly waived such matters and stated that his brief would be upon the merits.

Upon the foregoing consideration, the judgment of the lower court is reversed with direction to sustain the appellant's motion for a new trial.