## (March 30, 1972)

■ MURIEL BERGEN, Respondent-Appellant, v. I.L.G.W.U. HOUSES, INC., et al., Appellants, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent. I.L.G.W.U. HOUSES, INC., Defendant-Appellant and Third-Party Plaintiff-Appellant, v. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Third-Party Defendant-Respondent.— Judgment entered May 21, 1970 after jury trial modified to the extent of reversing on the law and vacating said judgment and ordering a new trial as to defendants-appellants, I.L.G.W.U. Houses, Inc., and Mutual Redevelopment Houses, Inc., as to whether appellants were negligent by reason of a failure to provide adequate lighting during the blackout, with costs and disbursements of the appeal as between the said parties to abide the event, and, as so modified, the judgment appealed from is otherwise affirmed, without costs or disbursements. Plaintiff commenced this action to recover damages for personal injuries sustained August 16, 1963 as the result of an accident suffered during a blackout of the premises in which plaintiff resided. The blackout was caused by an electrical fire which occurred August 14, 1963. Consolidated Edison Company of New York, Inc. (Con Edison) supplied the electricity used in the development, though only some part of the electrical system was under Con Edison's control while the remainder was under the control of one or both of defendants-appellants. All three were parties defendant in the action. Plaintiff charged appellants (a) with negligence in the maintenance of that portion of the electrical system appellants control so

as to cause the electrical fire to break out, and (b) that appellants were negligent in failing to take reasonable steps to provide emergency lights or adequate lighting in the stairwell of the premises where plaintiff alleges she was caused to fall. There unquestionably was an electrical fire but it was not established how or why such fire occurred, nor exactly in what part of the electrical system the fire originated. Nor is it clear that the fire was caused by some defect in that part of the electrical system owned or controlled by appellants. Plaintiff's theory of negligence as to the cause should have been dismissed or withdrawn from consideration of the jury. If we were not now dismissing such cause, as we do, we would direct a new trial because a verdict based upon the theory of negligence in the maintenance of the electrical equipment would be against the weight of the credible evidence. The complaint was dismissed as to Con Edison for failure of proof as to its negligence. The case against appellants was submitted to the jury on both theories of negligence. The jury returned a general verdict in favor of plaintiff against appellants, without indicating on which of the theories the verdict was based. The verdict, even as reduced pursuant to stipulation following the court's directive, cannot stand because, as indicated, the charge of negligence with respect to maintenance of the electrical system is not supported by proof in the record. Where a case is submitted to a jury on dual theories and the jury returns a general verdict without specifying which theory is the basis for its verdict, such verdict cannot stand unless there is sufficient proof to sustain such verdict on each of the theories submitted (*Durham* v. *Metropolitan Elec. Protective Assn.*, 27 A D 2d 818; *Clark* v. *Board of Educ. of City of New York*, 304 N. Y. 488). Concur — Stevens, P. J., Kupferman and McNally, JJ.; Nunez and Capozzoli, JJ., dissent in the following memorandum by Capozzoli, J.: On the night of August 14, 1963 an electrical fire occurred in the co-operative housing development owned by the appellants, located in the West 20s, of Manhattan. The witness, Otto Turner, chief engineer of Consolidated Edison, arrived at the scene of the fire at 2:00 A.M., on August 15. He testified at length to the effect that Consolidated did not maintain any electrical equipment above the underground vault of the building. At pages 227–228 of the record he testified as follows: " Q. Would you tell the jury what you saw outside of the vaults, above the vaults, in the rest of the building? A. At the mezzanine level, which is directly above the vaults, the connecting busses that belonged to the Mutual Redevelopment were badly damaged due to heat. At the gallery level, the next floor up, the switchboard was severely damaged by heat. Q. Did you see evidence of fire? A. Yes. * * * Q. Could you tell us where you saw fire damage as opposed to smoke damage or heat damage? * * * A. The switchboard was damaged by fire almost beyond recognition." He further testified that the Consolidated Edison busses, located some distance below the gallery floor, were in working order and electricity had been flowing through them until the current was turned off. He also examined the Consolidated Edison transformers and found them to be " alive, during and after, at all times, and it was never dead. * * * they were doing their job ". The witness, Alexander Lurkis, was chief engineer of the New York City Department of Water Supply, Gas and Electricity at the time of the fire. He arrived at the scene on the morning of August 15 and made an inspection of the premises. After having testified as to what he saw, he gave his professional opinion that a phase to ground fault occurred, which caused the fire. The witness stated as follows: " Q. Could you tell the jury where, with respect to this stab, your impression is that this took place? A. It was above the Edison compartment. Q. In the consumer's property? A. In the consumer's building." Employees of Con Edison agreed that the fire was upstairs, above the vault.

It is also noteworthy that Abraham Bluestein, the appellants' manager for the entire complex at the time of the occurrence, testified that he observed the fire in the area of appellants' central panels, and that appellants, alone, controlled the equipment in their power house. While it is true that the jury did not have to believe the witnesses above mentioned, by the same token it was within its power to evaluate the testimony given by them and make its own decision as to whether or not they should be believed. It is clear from the verdict rendered by the jury that it chose to believe these witnesses and their testimony forms a sufficient basis to justify its verdict. Accordingly, I dissent and vote to affirm.