Bertha M. WILES, Appellant
(Plaintiff Below),

v.

Ancel MAHAN d/b/a Mahan IGA Food-
liner, Appellee (Defendant Below).

No. 1–1079A276.

Court of Appeals of Indiana,
First District.

June 16, 1980.

R. Jerome Kearns, Kearns & Kearns, James L. Crawford, Sacopulos, Crawford & Johnson, Terre Haute, for appellant.

Cox, Zwerner, Gambill & Sullivan, Terre Haute, John M. Baumunk, Brazil, for appellee.

ROBERTSON, Presiding Judge.

Bertha M. Wiles (Wiles) appeals an adverse judgment in her premises liability action. Wiles brought suit for personal injuries because of a slip and fall in the parking lot of defendant-appellee Ancel Mahan d/b/a Mahan IGA Foodliner (Mahan). The

injury occurred as Wiles left the store and entered onto the parking lot. She slipped on oil or antifreeze which apparently had leaked from an automobile parked in the lot. We note in passing that the owner's parking lot was abutting the sidewalk next to the store, that is: there was no firelane between the parking lot and the store. Trial was held with a jury and the jury returned a verdict for the defendant owner. Wiles appeals on instructional errors and various evidentiary questions.

We affirm.

We first consider the instructional errors claimed.

■ The first error claimed by Wiles is that the instruction given on the duty of a storekeeper to business invitees was an incorrect statement of law and, because is was allegedly mandatory, it was erroneous in excluding an essential element or theory presented by Wiles.

We will not set the instruction out in full but will summarize it as stating the duty of reasonable care to keep a store in a safe condition for the use of customers and further stating that to show a breach of duty there must be an unsafe condition and actual or constructive knowledge of the unsafe condition. The next paragraph of the instruction, of which Wiles complained at trial, stated that if the jury found there was no dangerous condition, or actual knowledge of a dangerous condition, or constructive knowledge of a dangerous condition, then the jury should find for the defendant. Wiles's complaint is that the second conjunctive, "or", means that if the jury found no actual knowledge, then it had to find for the defendant. This hypertechnical analysis ignores the clear language of the first paragraph, summarized above, setting out the elements on the breach of duty. Viewing the instruction as a whole, we do not find reversible error here. *See Hendrix v. Harbelis*, (1967) 248 Ind. 619, 624, 230 N.E.2d 315, 319.

1. We express no opinion on this theory as part of the duty of a landowner to a business invitee. *But see Hammond v. Allegretti*, (1974) 262

The second claimed error concerning this same instruction is that it excluded an essential theory of Wiles's case, which, it is argued, is error in a mandatory instruction. The theory Wiles presented at trial and upon which a separate instruction was given based Mahan's negligence on allowing or acquiescing to the practice of customers parking their automobiles in the probable path of entrance to the store, creating the possibility of motor fluids being left by the vehicles in the path. The theory included the alleged practice of allowing customers to put fluids in their vehicles in the lot with the risk of leaked fluids being left.[1]

Wiles complains that the "recurring dangerous condition" theory should have been in the so-called mandatory instruction itself, for "it is well-settled in Indiana that a *mandatory instruction* must set out all elements essential for recovery, and if an essential element is omitted, the instruction is erroneous and cannot be cured by other instructions." *Davison v. Williams*, (1968) 251 Ind. 448, 454, 242 N.E.2d 101, 104 [Citations omitted.]

■ Wiles's argument fails because the instruction given was not mandatory, and thus, we can consider all the instructions given as a whole in determining whether they were adequate. *See Illinois Central Gulf Railroad Co. v. Parks*, (1979) Ind.App., 390 N.E.2d 1073, 1077.

*Perry v. Goss*, (1970) 253 Ind. 603, 605, 255 N.E.2d 923, 925, states:

Instructions which are mandatory in character, which attempt to set up a factual situation directing the jury to a certain result, are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation, as for example telling the jury that if contributory negligence exists the plaintiff is not entitled to recover. In the latter case the court is merely stating propositions of law not based upon a detailed factual situation.

Ind. 82, 311 N.E.2d 821, for an excellent discussion of the duty in general.

The instruction given clearly stated propositions of law without a detailed factual situation. Thus, it was not mandatory and the instruction given on "recurring dangerous conditions" dovetailed with the instruction on the duty of a storeowner to a customer. There was no error here.

Wiles next complains that the trial court should have given her second submitted instruction on the "recurring dangerous condition." As stated above, an instruction was given on the theory. However, Wiles complains that the instruction given did not adequately emphasize that Mahan need not have actual or constructive knowledge of the dangerous condition on the day of the occurrence. The instruction given stated that the knowledge necessary for liability was knowledge of the recurring condition. This was more than adequate instruction on the type of knowledge necessary for liability. Thus, there is no error here. *Dahlberg v. Ogle*, (1978) Ind., 373 N.E.2d 159, 164–165.

The next instruction, which was refused and thus error claimed, was adequately covered by another instruction given by the court. *Dahlberg, supra.* Specifically, Wiles complains that nowhere in the instructions given is the defendant's duty stated to be active and continuous. This ignores the court's Final Instruction No. 9, which ends, "This duty [to use ordinary care to maintain his property in reasonably safe conditions suitable for use of those who come upon it as invitees] is active and continuous." There is no error here.

The next instruction, tendered by Wiles and refused by the trial court, was a more specific statement of the duty of the storeowner to an invitee, in that it stated that the defendant's duty of care included the provision of safe and suitable means of ingress and egress to his store premises. Without indulging in an analysis of what exactly ingress and egress means, we merely point out that the trial court did make several statements that an owner of *property* must maintain it in a reasonably safe condition for invitees. The instructions taken as a whole were not limited to the inside of the store, but the property as a whole. This adequately covered the subject matter. There is no error here.

In consideration of the next instruction, we deem that Wiles did not make a sufficiently detailed objection to the instruction. In brief, the instruction stated that a storeowner was not an insurer of his customer's safety and further, stated that merely because there was an injury on the owner's premises, there was no presumption of negligence on the storeowner's part.

Wiles objected at trial that the instruction was repetitive, irrelevant and immaterial, contained an inaccurate statement of the law and was confusing, vague, ambiguous and highly prejudicial. In her appellant's brief, she claims that the instruction suggested by the word "insured", that the storeowner had no insurance coverage and that the instruction was a "mere accident" instruction. If Wiles had these specific objections, she should have made them to the trial court, not for the first time on appeal.

The next instruction of which Wiles complains was tendered by the defendant and given by the court. The instruction states that a storekeeper must use ordinary care to keep premises in a reasonably safe condition for customers and "[o]rdinary care, as applied to storekeepers, is that degree of care usually exercised by ordinary prudent person engaged in the same line of business."

Wiles specifically objected to the alleged use of the industry standard as a standard of due care.

It is true that the standard set by an industry is not the definition of reasonable care. *Gilbert v. Stone City Construction Co., Inc.*, (1976) Ind.App., 357 N.E.2d 738, 745. *See also P–M Gas & Wash. Co., Inc. v. Smith*, (1978) Ind.App., 383 N.E.2d 357, 358; *see also Walters v. Kellam & Foley*, (1977) Ind.App., 360 N.E.2d 199, 214.

We note that the instruction did not actually set the standard as that of the industry for it says "ordinary *prudent* person engaged in the same line of business,"

not what is normally or typically done in the industry. The word "usually", however, is undoubtedly incorrect. The standard is what a reasonably prudent person *would* have done. *See P–M Gas, supra.*

We must examine the error in giving an instruction against the background of the instruction as a whole. Instructions were given on the definition of negligence, and reasonable care, amongst others. Against the background of these other instructions, we do not think the error contained by the insertion of the word "usually" is reversible error.

◼ The next instruction upon which error is claimed is one tendered by the defendant and given by the court. The instruction stated that the owner of a grocery store is not liable for the acts of a customer "without any accompanying negligent acts or omissions by the owner proximately causing the injury complained of." Wiles complains that the instruction implies that Mahan had no duty with respect to the acts of his customers.

Wiles ignores the instruction given that stated that the owner had a duty to correct recurrent conditions of danger on his property. This instruction was not limited to recurrent danger *caused* by the storeowner himself. Thus it adequately protected Wiles's theory on this ground. *Dahlberg, supra.*

◼ The last instruction we consider stated that Wiles could not recover for injuries not proximately caused by the defendant's negligence or could not recover for some bodily impairment or disability that was the result of some cause not connected with the accident involved in this case.

Wiles complained that the instruction suggested or implied that Wiles could not recover for the aggravation of the pre-existing condition. This objection ignores the instruction tendered by Wiles and given by the court, which specifically discussed the problem of the possible aggravation of a pre-existing condition. Thus, there was no error here. *Dahlberg, supra.*

◼ The next set of errors claimed revolves around the refusal to admit certain evidence. The first error claimed in this regard is whether it was reversible error not to allow testimony by Wiles's medical expert as to the degree of permanent partial impairment. The court did not allow the testimony with the remark that permanent impairment is not the measure of damages in a civil suit not based on workmen's compensation. The court also refused testimony of the degree of disability in the future.

As Wiles states in her brief, it appears that testimony of the degree of permanent impairment is admissible evidence in a personal injury case. As the trial court noted, it is not the measure of damages; however, it is evidence that can be weighed by the jury in determining damages as instructed by the court. *Acme-Evans Co. v. Schnepf,* (1938) 214 Ind. 394, 14 N.E.2d 561.

Although probably error in the refusal, we do not think that the evidence was vital to Wiles's case. *See Auto-Teria, Inc. v. Ahern,* (1976) Ind.App., 352 N.E.2d 774. Also, there was other evidence introduced that suggested to the jury the amount of impairment to Wiles in practical terms.

◼ We also discuss here the claimed error in not allowing certain photographs of the store taken shortly before trial to be admitted. The trial court refused the photographs because it was stated certain changes had taken place to the parking lot, reflected in the photographs, that were not there when the slip and fall took place. The trial court did allow one of the series of four photographs to be admitted and, thus, the error, if any, in not allowing the others in the record as exhibits was harmless. *See Silvestro v. Walz,* (1943) 222 Ind. 163, 51 N.E.2d 629.

◼ The next error claimed is in regard to certain testimony excluded apparently because the trial court feared it would interject the defendant's insurance coverage into the lawsuit. The first statement was allegedly by Mahan to Wiles or her husband that Mahan's insurance would take care of Wiles's medical expenses. The second

statement was that agents of the insurance company stated to Wiles that they would pay Wiles's medical expenses. The third set of statements were by Wiles to the effect that the insurance company recommended that Wiles see certain doctors. The fourth statement was by Wiles that the insurance company would not pay after all.

It is well settled that evidence of whether or not a defendant carries liability insurance is not admissible or relevant to the case in and of itself, and such evidence normally is prejudicial.

*Pickett v. Kolb*, (1968) 250 Ind. 449, 451, 237 N.E.2d 105, 107; [2] *Lamb v. York*, (1969) 252 Ind. 252, 247 N.E.2d 197; *Miller v. Alvey*, (1965) 246 Ind. 560, 207 N.E.2d 633; *Martin v. Lilly*, (1919) 188 Ind. 139, 121 N.E. 443.

In certain instances such error can be cured by instructions. *Lamb v. York, supra; Taggart v. Keebler*, (1926) 198 Ind. 633, 154 N.E. 485; *Helton v. Mann*, (1942) 111 Ind.App. 487, 40 N.E.2d 395.

█ There are exceptions to the general rule of inadmissibility where, for example, the fact of insurance coverage is relevant to a material issue. *Pickett v. Kolb, supra; Snider v. Truex*, (1943) 222 Ind. 18, 51 N.E.2d 477; *City of Terre Haute v. Deckard*, (1962) 243 Ind. 289, 183 N.E.2d 815, 817. Examples would include admissions of liability, *Miller v. Alvey, supra* ; where ownership is in issue, *Snider v. Truex, supra* ; or to show bias of a witness, *Pickett v. Kolb, supra.*

In other words, proof of liability insurance in and of itself is not admissible, but such a principle may not be expanded to the extent that it serves as a means of excluding otherwise competent evidence which is relevant to the issues involved in the trial. We do not think that a trial court may arbitrarily exclude otherwise competent and relevant evidence merely on the ground that it will reveal an insurance carrier is involved.

*Pickett v. Kolb, supra* 250 Ind. at 453, 237 N.E.2d at 108. However,

The rationale of these rulings seems to be that only evidence which is pertinent to the issues presented by the case is admissible. The underlying consideration is the presumption that if the jury has cognizance of the fact that the defendant will not bear the incident of the judgment, the jury will be prejudiced in favor of an excessive verdict. Therefore, it seems that during the trial the defendant has paramount interest in excluding the fact of insurance, limited only to the extent that it is relevant to an issue in the case.

*Rust v. Watson, supra* at 76, 215 N.E.2d at 51.

█ Wiles contends since Mahan entered a general denial for his answer that he could introduce insurance to prove ownership of the premises and that the injury did actually occur. Such a contention is properly before the trial court, who in its discretion can best tell which issues are in serious contention at trial. We do note, however, that the ownership and the actual injury were never really disputed at trial.

Wiles characterizes the alleged remark by Mahan as an admission of liability. There is a fine line between a statement that one is insured and that one is at fault. A statement that "my insurance will pay" is not necessarily admitting fault and we leave the admission of such evidence to the discretion of the trial court.

We further think that the statements regarding actions or nonactions by the insurance agents clearly were outweighed by prejudice rather than advancing the plaintiff's case. They also come close to statements of offer and compromise. We also note the doctors in question were not called as witnesses and thus the evidence was not to show bias.

█ The next group of statements excluded by the trial court was made by an employee of Mahan soon after the accident was reported to the employees. One state-

2. We distinguish, of course, mention of insurance during *voir dire.* *See generally Rust v. Watson*, (1966) 141 Ind.App. 59, 215 N.E.2d 42.

ment was made to Wiles's husband that he should take Wiles to a certain hospital and the other statement was that Mahan would take care of Wiles's medical bills. The trial court excluded these statements apparently on the basis that the employee did not have the authority to make them.

We first characterize the statements and then take into account the fact that the statements were made by an employee. The first statement—that Wiles should go to a hospital—was not really an admission or offer of compromise or the like and it was probably error not to admit it. However, we do not think that Wiles was harmed by the exclusion, as the fact that Wiles was injured on the premises and did go to the hospital is in the record. Thus, the error, if any, was harmless.

The second statement is more problematic. An annotation on the subject, Annot., 65 A.L.R.2d 932, 936 (1975) states that a substantial number of courts have held or recognized that an offer or promise of payment of medical expenses of an injured party is not admissible to establish the negligence of the party making the statement, in the absence of other circumstances indicating that such a statement amounted to an admission of liability. The annotation states that the reasons often given for this rule are that such offers or promises are usually made from humane impulses, rather than from an admission of liability, and that to hold otherwise would discourage assistance to the injured persons. Indiana courts have apparently not passed on this issue, although in *Great Atlantic & Pacific Tea Co. v. Custin*, (1938) 214 Ind. 54, 13 N.E.2d 542, a statement to the injured party on the premises by a store manager that the injured party must immediately seek medical attention and send the bill to him was admitted and no error found on appeal. The appellate court characterized the statement as *res gestae* and noted that whether the injury actually occurred at all in the store was in controversy.

As we opined above, the fact that the injury occurred on Mahan's premises was not really contested at trial. We think the only effect of the admission of the second statement by the employee, would have been to attempt to prove liability, a ground rejected by a substantial number of jurisdictions.

We must also consider the fact that the statement was made by an employee of Mahan. There was no evidence presented at trial that the employee had authority to negotiate or settle claims or that the employee was acting within the scope of her employment in making such statements. Thus, the second statement, even if treated as an admission of liability, would not bind the employer. See 29 *Am.Jur.*2d Evidence § 662 (1967). Thus, the trial court did not abuse its discretion in this regard.

Judgment affirmed.

RATLIFF, J., concurs with opinion.

YOUNG, J. (sitting by designation), dissents with opinion.

RATLIFF, Judge, concurring.

I concur generally in Judge Robertson's opinion in this case. However, I wish to address specially two issues raised by the Appellant Wiles which issues are the subject of Judge Young's dissenting opinion.

Wiles contends that Mahan's tendered instruction number 2, given by the trial court, constitutes reversible error. This instruction stated:

"I instruct you ladies and gentlemen of the jury, that a storekeeper must use ordinary care to keep premises in a reasonably safe condition for the customers. Ordinary care, as applied to storekeepers, is that degree of care usually exercised by *ordinary prudent persons* engaged in the same line of business." (Emphasis added).

I agree that trade or industry standards, or the customary practices of a specific business, such as storekeepers, are not the standard of care which the law requires in cases such as this. *P-M Gas & Wash. Co. Inc. v. Smith*, (1978) Ind.App., 383 N.E.2d 357; *Gilbert v. Stone City Construction Co., Inc.*, (1976) Ind.App., 357 N.E.2d 738; *Wal-*

*ters v. Kellam & Foley*, (1977) Ind.App., 360 N.E.2d 199.[1] The standard imposed by law is the standard of reasonable care. *P-M Gas & Wash. Co., Inc., supra.* If the instruction in question told the jury that so long as the storekeeper behaved as other storekeepers he was exercising reasonable care, or ordinary care, the instruction would substitute custom and practice of storekeepers as the standard in place of the legal standard of reasonable care. In such event, I would agree with Judge Young that the instruction was error. However, I do not so view the challenged instruction. The instruction did not advise the jury that ordinary care as applied to storekeepers was the degree of care exercised by other storekeepers. The jury was told that storekeepers must exercise that degree of care exercise by *ordinary prudent persons* engaged in the same line of business. I believe this fairly can be construed as saying that the duty of a storekeeper in the maintenance of his store premises is to use that degree of care which would be exercised by an ordinarily prudent person under like circumstances, and that is the standard of care which the law requires. Further, I do not believe that this instruction confused the standard of care with evidence of the standard of care, a danger of which Judge Sullivan warned in both *P-M Gas & Wash. Co., Inc., supra,* and *Walters v. Kellam & Foley, supra.*

The instruction is not as precise as it could be, is not a model of draftmanship, and I do not recommend its use, but I do not find it to be reversible error. Further, in the court's instructions numbered 4 and 5, the jury was properly instructed regard-

ing the definition of "negligence" and "ordinary care."[2] Instruction No. 9 told the jury that Wiles was an invitee on Mahan's property and that "[a]n owner and occupant owes the duty to use ordinary care to maintain his property in a reasonably safe condition suitable for the use of those who come upon its as invitees . . . ." Plaintiff's Instruction No. 1, given by the court, informed the jury that plaintiff had the burden of proving the defendant (Mahan) negligent in failing to exercise ordinary and reasonable care in keeping its premises in a reasonably safe condition for its customers, and/or in failing to exercise ordinary and reasonable care in warning its customers of the dangerous condition of its premises. Defendant's Instruction No. 3, given by the court, while generally addressing the subject of notice or knowledge of a dangerous condition, nevertheless advised the jury that "it is the duty of a store owner to exercise reasonable care to keep his store in a safe condition for the use of his customers." Therefore, as previously stated, while I believe an instruction on the issue of the standard of care required of storekeepers could have been framed in more precise language, considering all of the instructions as a whole, I cannot say that the jury was misled by the instruction given.

In reaching the conclusion just stated, I did not disregard the rule that a bad instruction cannot be cured by a correct one. *Deckard v. Adams*, (1965) 246 Ind. 123, 203 N.E.2d 303; *Childs v. Rayburn*, (1976) Ind.App., 346 N.E.2d 655; *Hainey v. Zink*, (1979) Ind.App., 394 N.E.2d 238. I do not agree that this rule applies in this case. I

---

1. Although the standard of care is reasonable care, and not custom and practice or trade standards, evidence of such custom, practice, or standards is admissible and may be considered by the trier of fact in determining whether or not reasonable care was exercised. *P-M Gas & Wash. Co., Inc., supra; Walters v. Kellam & Foley, supra; Roberts v. Indiana Gas & Water Co.,* (1966) 140 Ind.App. 409, 218 N.E.2d 556; 57 Am.Jur.2d, *Negligence*, sec. 78, p. 428–29.

2. Instruction No. 4 stated:
"Negligence, either on the part of the plaintiff or the defendant, is the failure to do what a reasonable careful and prudent person would have done under the same or like circumstances, or the doing of some thing which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable or ordinary care."
Instruction No. 5 was as follows:
"Reasonable care or ordinary care, on the part of both the plaintiff and the defendant, is such care as a reasonably careful and ordinarily prudent person would exercise under the same or similar circumstances."

believe the rule stated by *Deckard, Childs,* and *Hainey, supra,* applies in those cases where a clearly erroneous instruction has been given together with a contradictory correct instruction. In such a case, the jury cannot be left to determine which of the two contradictory instructions is correct, and the appellate tribunal left to determine which of the contradictory instructions the jury should reasonably believe. *Childs v. Rayburn, supra.* However, where the instructions are not contradictory, and the challenged instruction is not clearly erroneous, the fact that an instruction, or some part of it, may not be precisely accurate does not constitute reversible error where, considering all of the instructions as a whole, it appears that the law was stated with substantial accuracy. *Childs v. Rayburn, supra.* In my opinion, the latter is the precise situation here, thus the imprecision of the challenged instruction was cured by other instructions.

Wiles sought to prove by the testimony of her physician that as a result of the injuries sustained she had a twenty-five percent (25%) permanent partial impairment of the person as a whole. The trial court sustained Mahan's objection and excluded such evidence on the grounds that permanent partial impairment was a workmen's compensation concept not applicable to civil actions for personal injuries. This ruling was incorrect and the offered evidence was admissible. 22 Am.Jur.2d, *Damages,* sec. 314, p. 412. However, under the circumstances of this case, it was not reversible error to exclude evidence of permanent partial impairment. I am inclined towards Judge Robertson's opinion that such evidence was not vital to Wiles's case in view of the other evidence received concerning her injuries and physical condition. There is another reason, however, why exclusion of the evidence of permanent impairment, though erroneous, was not reversible error.

In this case the jury returned a general verdict in favor of the defendants (Mahan). A general verdict is a finding in favor of the prevailing party on all the material issues in the case. *Harker v. Gruhl,* (1916) 62 Ind.App. 177, 111 N.E. 457; 21 I.L.E., *Negligence,* sec. 221. "A general verdict against a party is a finding against him upon all issues of which he assumed the affirmative." *Scoopmire v. Taflinger,* (1944) 114 Ind.App. 419, 52 N.E.2d 728. Further, it has been held in negligence actions that a general verdict for the defendant amounts to a finding that the defendant was free from negligence or that the plaintiff was guilty of contributory negligence. *Siivonen v. City of Oneida,* (1970) 33 A.D.2d 934, 306 N.Y.S.2d 278; *Snider v. Jennings,* (1968) 11 Mich.App. 562, 161 N.W.2d 594; *Jones v. Kline,* (1955) Ohio App. 137 N.E.2d 611; *See also*: *Kihlken v. Barber,* (1935) 129 Ohio St. 485, 196 N.E. 164. *But see*: *Mason v. Stengell,* (1969) Ky.App., 441 S.W.2d 412 (rejecting the argument that a verdict for defendant as to all claims of plaintiff should be construed as a finding either that the deceased was guilty of contributory negligence or defendant was not negligent, thus entitling defendant to an affirmance on appeal.)[3] It also has been held that a general verdict in favor of the defendant imports that all issues submitted to the jury were found in favor of the defendant. *LeBlanc v. Bray,* (1975) 168 Conn. 92, 357 A.2d 926. Here, the issues of Mahan's negligence and Wiles' contributory negligence were submitted to the jury. Under the authorities cited, the general verdict for the defendant was a finding in Mahan's favor on both of these issues. The excluded evidence concerning Wiles' permanent partial impairment had no bearing upon the issues of Mahan's negligence or Wiles' freedom from contributory negligence. Thus, the general verdict of Mahan was not tainted by the refusal of this evidence.[4] Since the general verdict

3. In *Mason v. Stengell, supra,* the court found error in instructions and in the refusal of evidence which could have affected the verdict. The verdict here, in my opinion, is not so tainted.

4. Nor was the verdict tainted by the giving of erroneous instructions as is shown by Judge Robertson's opinion, and by the previous discussion in this concurring opinion.

for Mahan established either that Mahan was free from negligence or that Wiles was guilty of contributory negligence, Wiles could not have recovered in this action. Consequently, Wiles being unable to prevail on the issue of liability, the exclusion of evidence pertaining solely to extent of injuries, even though incorrect, would not constitute reversible error.

Therefore, for the reasons stated in Judge Robertson's opinion and in this opinion, I concur in the affirmance of the judgment of the trial court.

YOUNG, Judge, dissenting.

I dissent.

I would reverse the trial court and order a new trial. The giving of the defendant's instruction no. 2 was error. The instruction reads as follows:

I instruct you, ladies and gentlemen of the jury, that a storekeeper must use ordinary care to keep premises in a reasonably safe condition for the customers. Ordinary care, as applied to storekeepers, is that degree of care usually exercised by ordinary prudent persons engaged in the same line of business.

The instruction tells the jury that so long as the storekeeper behaved as other storekeepers did, he was exercising ordinary care. This is not true. What "usually" is done may or may not constitute ordinary or reasonable care under the circumstances. It implies that a standard of conduct in a given trade or job determines whether a storekeeper was negligent. Whether such a standard applies depends upon the jury's determination of its reasonableness. Because everyone behaves in a certain manner does not make such behavior not negligent.

The majority recognize that the standard set by an industry is not the definition of reasonable care and cite *Gilbert v. Stone City Construction Co., Inc.,* (1976) Ind.App., 357 N.E.2d 738, 745 and *see also P-M Gas & Wash. Co., Inc. v. Smith,* (1978) Ind.App.,

383 N.E.2d 357, 358; *see also Walters v. Kellam & Foley,* (1977) Ind.App., 360 N.E.2d 199, 214. They go on to say "[t]he word 'usually', however, is undoubtedly incorrect. The standard is what a reasonably prudent person *would* have done. *See P-M Gas, supra.*" The majority then finds that against the background of the other instructions, the giving of the above instruction is not reversible error.

I cannot agree. A bad instruction is not cured by the giving of a correct instruction on the same subject. The trial court may not by giving contradictory instructions leave the jury with the task of deciding what rule of law to apply. *Deckard v. Adams,* (1965) 246 Ind. 123, 203 N.E.2d 303; *Hainey v. Zink,* (1979) Ind.App., 394 N.E.2d 238, 242.

The trial judge also erred in refusing to permit testimony from a medical expert regarding his opinion of the degree of permanent impairment suffered by the plaintiff. Since damages were sought for permanent and impairing injuries by plaintiff's complaint, that fact was in issue and any evidence probative of that issue was admissible. This is particularly true of the denied testimony. *Acme-Evans Co. v. Schnepf,* (1938) 214 Ind. 394, 14 N.E.2d 561. The majority recognize that the exclusion was error but excuse it by finding it was not vital to plaintiff's case citing *Auto-Teria, Inc. v. Ahern,* (1976) Ind.App., 352 N.E.2d 774 and referring to "other evidence introduced that suggested to the jury the amount of impairment . . . In practical terms." No evidence is recited which performs this function of proof.[1]

I believe such evidence was vital to plaintiff's case. Plaintiff's offer to prove showed the degree of impairment at twenty-five percent. An expert is able to express opinions and draw inferences a jury is incompetent to draw. *Davis v. Schneider,* (1979) Ind.App., 395 N.E.2d 283. The inferences of the degree of impairment drawn by the medical expert would not be possible

---

1. I assume the majority refer to the statement of the medical expert that she could not lift heavy objects (furniture and patients) or go bowling. Also plaintiff testified about some of her limitations after her fall.

by the jury on the basis of the isolated examples of impairment. Therefore, I believe such evidence was vital to the plaintiff's case.

For these reasons I dissent. I would reverse and grant a new trial.